## DERRICK v. SALT LAKE & OGDEN RY. CO.

No. 3003.   Decided October 12, 1917.   (168 Pac. 335.)

1. TRIAL—INSTRUCTIONS—QUESTIONS FOR JURY. Where the court granted motion for nonsuit in an action by an automobile passenger against a railroad on counts alleging negligent dangerous speed and failure to give warning, it was error thereafter in the charge to submit such questions to the jury. (Page 579.)

2. NEGLIGENCE—INJURIES TO TRAVELERS—JOINT ADVENTURE—IMPUTED NEGLIGENCE. Where the undisputed evidence showed that plaintiff and the owner of an automobile agreed upon a trip in which they were to share expenses equally, and the automobile was struck by a train, it was error to instruct that plaintiff was a passenger, but he was a joint adventurer, and as such the negligence of the owner of the car in driving it upon the track was imputed to him.[1] (Page 579.)

---

[1] *Atwood* v. *Railway Co.,* 44 Utah, 366, 140 Pac. 137; *Martindale* v. *O. S. L. R. Co.,* 48 Utah 464, 160 Pac. 275.

Appeal from District Court, Third District; *Hon. M. L. Ritchie*, Judge.

Action by Alfred S. Derrick against the Salt Lake & Ogden Railway Company.

Judgment in part for plaintiff. Defendant appeals.

REVERSED and new trial ordered.

*Boyd, DeVine & Eccles* for appellant.

*Joseph R. Haas* for respondent.

### STATEMENT OF FACTS

Plaintiff brought this action to recover from defendant damages alleged to have been sustained because of its negligence. The defendant, hereafter called company, is a Utah corporation, and, at the time of the acts of negligence alleged in the complaint, owned and maintained an electric interurban railway system between Salt Lake City and Ogden, Utah. The facts of the case as disclosed by the record are about as follows:

Plaintiff, with two companions, George J. Merritt and A. W. Leggett, who were traveling salesmen, on June 7, 1915, were traveling northward along the public highway leading from Salt Lake City to Ogden in an automobile owned by Merritt, who was acting as chauffeur. They were on a business trip, each representing a different line. Leggett's destination was Ogden, where he intended to leave his companions. Plaintiff and Merritt expected another man to join them at Ogden and to continue the journey through Northern Utah and into Idaho. It was understood by and between plaintiffs, Merritt and Leggett, that the expenses of the trip would be prorated and paid jointly by them. Plaintiff testified that he "did not have any jurisdiction or control over Mr. Merritt"; that he "was a guest in his car."

The question as to whether the relations of these parties were contractual or merely social must be determined by the agreement, if any, express or implied, under which they were

traveling together, and not by the individual conclusions of the plaintiff in that regard. On this point. plaintiff further testified, in part, as follows:

"Q. You were expecting to travel together (meaning with Merritt) through Idaho and other places in company? A. Yes, sir. · Q. What were your arrangements as to the method in which you were to travel? A. We had not made any arrangements before, but of course it is customary to stand your portion of the expenses. We never discussed that portion of the matter. Q. You mean the cost? A. The cost of the trip. Q. The cost of the machine? A. Not exactly the machine; the expenses of the trip. Q. Had you included gasoline? A. Gasoline, oil, and tires. Q. Wear and tear on the car? A. Yes, sir. Q. And other expenses connected with the trip? A. With the trip other expenses; yes, sir."

Merritt, the owner of the car, and who, as it will appear later on in this opinion, was as much interested in the bringing of this suit and the successful prosecution thereof as the plaintiff himself, testified, in part, as follows:

"Q. What was the arrangement about expenses, how much passage money or what? A. There was no arrangement. It is a clearly understood fact that the boys pay their share. Q. What do you mean by that? You are furnishing the car and as part consideration for their passage they paid a certain amount of the expenses? A. Yes, sir. Q. That it had been the custom to do that in prior years? A. Yes, sir. That is, whenever he, or any one else went with me, it is a customary manner with traveling men. Q. You regarded, however, didn't you, Mr. Merritt, that these gentlemen were traveling with you and paying the expenses as part of—that they would pay their portion of the expenses with you? A. Why, it has always been customary for every one else to pay for part of the expenses. * * * Q. Who arranged this particular trip? A. Well, I think the arrangements were equal. That is, they were mutual among all of us. Mr. Leggett was only going as far as Ogden, and Mr. Derrick was going on up to Idaho. * * * There was another gentleman that was meeting us in Ogden; he was also going. * * * When we started we had

agreed to take lots of time and not drive fast. We discussed this on the way going out.''

We shall again refer to this evidence later on.

The company's line of railroad passes through the town of Farmington, which is north of Salt Lake City. The public highway along which plaintiff and his companions were traveling on the occasion in question crosses the company's line of railroad at a point about one-half mile north of a station known as Lagoon. The railroad tracks, two in number, approach the highway so that the highway and railroad tracks form an angle of forty or forty-five degrees. The railroad tracks, from the point where they intersect the highway, extend south several hundred feet through a cut ten or twelve feet deep. The lands immediately south of the highway and adjoining the company's right of way on the east are separated from the right of way by a fence. There is a stone house about 275 feet south of the crossing and about twenty-five feet east of the railroad tracks and near the boundary line of the right of way. At the time plaintiff and his companions were traveling along the highway on the date mentioned (June 7, 1915) the ground, on the east of the right of way and between the stone house and the crossing, was covered by a heavy growth of underbrush and weeds. The railroad track from Lagoon Station north to the crossing is on about a one per cent. up grade; and the highway from a point about 150 feet east of the railroad track to the crossing is on a gradual and a uniform down grade. Looking west along the highway from the point where the down grade begins the railroad crossing is in plain view.

Plaintiff and and his companions passed through the town of Farmington and arrived at the crossing at about five thirty p. m. on the date mentioned. Merritt and Leggett were in the front seat and plaintiff was in the rear seat of the automobile. Plaintiff testified that when they came within sight of the crossing his attention was divided between the reading of a letter and looking out for approaching trains; that when they came in sight of the crossing and started on the down grade, he spoke to his companions and ''cautioned them to be

careful''; that ''it was after starting down the incline that
I started to put my attention on the road. I imagine we were
about forty or fifty feet * * * south of the railroad track.
I was listening.''

Leggett, who was plaintiff's witness, testified in part as
follows:

''We were close to the railroad track when I heard the bell
ringing, possibly fifteen or twenty feet away. When I heard
the bell ringing I understood that a train was coming. My
best judgment is that we were fifteen or twenty feet from
the track at the time * * * traveling about ten miles an
hour. The automobile didn't stop. It kept right on going
and turned up the railroad track.''

The evidence, without conflict, shows that when the auto-
mobile arrived at the crossing Merritt, the driver, turned it
north on the railroad track, and when it had moved along the
track about ten feet and ''was just north of the crossing it
was hit'' by a northbound train and practically demolished.
Witnesses, both for plaintiff and defendant, testified—in fact
the evidence, without conflict, tends to show—that if Merritt,
when he came to the crossing, had continued ''straight ahead
instead of turning north onto the railroad track,'' he would
have cleared the crossing without colliding with the train.

Plaintiff was severely injured in the collision, hence this
suit. One cause of action is to recover damages for the per-
sonal injuries suffered by plaintiff in the collision, and the
other cause of action is based on a claim made by Merritt
against the company for the value of the automobile, which
claim was duly assigned to plaintiff. The cause was tried to
a jury who returned a verdict on the first cause of action in
favor of plaintiff and assessed his damages at $900; and on
the second cause of action, which was based on the assigned
claim for the value of the automobile, the verdict was in favor
of the company, no cause of action. The jury, by their ver-
dict, found, and there is abundant evidence to support the
finding, that Merritt was guilty of contributory negligence.
From the judgment on the verdict the company only appeals,

hence no further reference will be made to the second cause of action.

McCARTY, J. (after stating the facts as above).

The alleged acts of negligence upon which respondent bases his right to recover are summarized in his complaint as follows:

"(a) In running said train as it approached said crossing and onto said crossing at a high and dangerous rate of speed, to wit, at the rate of at least thirty-five miles per hour.

"(b) In not giving any warning or signal of the approach of said train to said crossing, either by bell or whistle or otherwise, until said train was almost upon said crossing and plaintiff was in a position of peril and it was impossible for either plaintiff or defendant to avoid a collision.

"(c) In not having said train under control so that the same could be stopped in time to avoid a collision when plaintiff was discovered or seen by defendant in a position of peril on or near said crossing.

"(d) In running said train at a rate of speed in excess of that fixed by the ordinance of Farmington city."

The company denied the alleged negligence pleaded in the complaint and, as an affirmative defense, pleaded contributory negligence on the part of plaintiff and Merritt.

When plaintiff's evidence was in and he had rested his case in chief, the company moved the court for a nonsuit on the ground that the evidence failed to show negligence in any of the particulars enumerated in the complaint. The court sustained the motion in part and denied it in part. In ruling on the motion the court said:

"The motion will be granted as to paragraphs (a) and (b) above mentioned, but the court will submit the other two allegations of negligence to the jury, and the motion will be denied for that reason."

The allegations of negligence in paragraphs (a) and (b) were thus as completely eliminated from consideration as they would be if the court had stricken them. Neither the evidence produced by the company nor that introduced by the plaintiff in rebuttal tended in any way to show that the company was

negligent in any of the particulars enumerated in paragraphs (a) and (b) of the complaint. The court, nevertheless, submitted the issues presented by paragraphs (a) and (b) and the company's answer thereto to the jury.

The court, after stating the issues presented by the pleadings, charged the jury, in part, as follows:

"If you believe from a preponderance of the evidence that the injury occurred as alleged in the complaint at a crossing where a highway crosses the defendant's railroad, and that the defendant did not give any warning of the approach of the train which collided with the plaintiff and the automobile in which he was riding, or did not give any warning of its approach in time to enable the plaintiff to avail himself of it, that would be negligence upon the part of the defendant."

The company excepted to this instruction and assigns the giving of it as error. Counsel, with much earnestness, contend that the giving of the instruction was prejudicial error. In the course of the printed argument they say:

"The defendant was induced to rely [which it had a right to do] upon the court's ruling and could not anticipate that the court was, nevertheless, going to instruct the jury that the very grounds of negligence which he expressly stated would be withdrawn from the jury, were nevertheless grounds of negligence which they might consider."

The court, by granting the motion for a nonsuit as to paragraphs (a) and (b) of plaintiff's complaint, in effect, held that the negligence alleged in those paragraphs was not sustained by evidence. The defendant, therefore, was not required to introduce evidence to refute these allegations. They were, as we have stated, in effect, eliminated from the case. The court therefore erred in charging the jury in relation to them.

Defendant requested the court to submit to the jury by proper instructions the question of whether or not there was an understanding between Merritt, the owner and driver of the automobile, and the plaintiff, that "they were to jointly bear the expense of the automobile trip," etc.,

and if the jury should find from the evidence that there was such understanding between them, the negligence, if any, of Merritt, in driving the automobile at the time of and immediately prior to the accident, would be attributed to plaintiff. The court refused to so instruct the jury, but charged them on the theory that the relation of carrier and passenger existed between Merritt and the plaintiff. This was error. The undisputed evidence shows that the automobile trip was a joint affair in which Merritt and plaintiff were mutually and equally interested, and in which their rights to direct and govern the conduct of each other in relation thereto were coextensive. Each had a voice and the right to be heard in regard to the details of the trip. Merritt testified that ''the arrangements were equal; that is, they were mutual among us all.'' He further testified: ''When we started we had agreed to take lots of time and not drive fast. We discussed this on the way out,'' and that ''it was clearly understood'' that each would pay his share of the expenses of the trip. Plaintiff testified that costs of the trip included gasoline, oil, tires, ''wear and tear on the car, and other expenses connected with the trip.''

The contractual relations of plaintiff and his traveling companions were substantially the same as they would have been if they had jointly hired an automobile with which to make the trip, with the understanding that they would jointly pay the expenses and mutually and concurrently direct the journey and the details thereof. The trip was therefore a joint enterprise in which these parties had a community of interest and in which they all equally had a voice and a right to be heard respecting the details of the journey. Under these circumstances the negligence of Merritt in the management of the automobile at the time of the collision was imputed to plaintiff. 23 Cyc. 1015. We also invite attention to *Atwood* v. *Railway Co.*, 44 Utah, 366, 140 Pac. 137, a case in which the question under consideration is involved and quite elaborately discussed. What is there said is reaffirmed by this court in *Martindale* v. *O. S. L. R. Co.*, 48 Utah, 464, 160 Pac. 275.

Under the law applicable to the admitted facts defendant would have been entitled to have the jury instructed, if it had so requested, that if they should find that Merritt was negligent, such negligence, as a matter of law, would be imputed to plaintiff.

The judgment is therefore reversed, and a new trial ordered. Costs to appellant.

FRICK, C. J., and CORFMAN, THURMAN, and GIDEON, JJ., concur.