## FOX v. LAVENDER.

No. 5523.   Decided April 16, 1936.   (56 P. [2d] 1049).

Rehearing denied October 14, 1936.

*Willard Hanson* and *N. H. Tanner*, both of Salt Lake City, for appellant.

*Fabian & Clendenin*, of Salt Lake City, for respondent.

WOLFE, Justice.

The review is on an order directing a verdict for the defendant. The facts are simple. The plaintiff and defendant are half-sisters. On the 14th day of April, 1933, when the accident happened out of which this action arose, the defendant and her husband owned in common the Dodge roadster involved in the accident. They jointly contributed to pay the oil and gas bill at the Utah Oil Refining Company where the husband worked. The mother of the plaintiff and defendant lived at that time in Bingham. The defendant and her husband visited the mother about once a week and usually took something or brought something back. On that evening between 6 and 7 o'clock, defendant called plaintiff, her half-sister, on the telephone stating she was going to Bingham "to see mother" and to get a dress that her mother was fixing for her, and asked plaintiff if she would not like to go with her. Plaintiff said that while she had been out there for a week or two she thought her husband would like to go and when he came home she would ask him. Later she called up her half-sister, the defendant, and said that she and her husband would like to go with her. About 8:15 o'clock the defendant and her husband came to the Packard home where plaintiff was staying, and about a quarter of 9 they, with plaintiff's husband, started to leave for Bingham. The testimony then is that the defendant Vera asked her husband, Art, "Will you drive?" and he answered by saying, "Will you drive?" Whereupon she said, "No, I would rather you would drive because Iva (the plain-

tiff) is nervous." The latter conversation is substantially what was testified to by George C. Fox, the plaintiff's husband. The defendant herself did not remember whether she said that. She remembered she admonished him to drive carefully.

The defendant's husband then drove the car and while driving suffered an accident which injured the plaintiff. It is assumed that the driver of the car was negligent. There is no question but that the plaintiff was a guest passenger. There is no question of negligence on the part of the guest passenger, the evidence being that the accident happened too quickly for her to warn the driver. Plaintiff sued the defendant on the theory that the husband of the latter was at the time of the accident her agent and that she is therefore responsible on the principal of respondent superior. The court directed a verdict for the defendant on these facts. The sole question is: Could the court say as a matter of law, under the facts as stated, that the driver was not the agent of the defendant in the *driving of the car?*

The theory upon which the principal must respond for the acts of an agent is that the principal is doing, in contemplation of law, through the agent, his own acts. He is acting through the instrumentality of another. Where the owner drives a car himself, he has the direct control over its mechanism. If he removes himself as the operator of the car and substitutes another to operate it *for him,* it is the same in law as if he himself were operating it. A principal may control his agent's actions and movements just as he could control his own actions or movements. Of course, this does not mean that he can have the same refinement of physical control over the car as though his brain were directing his own movements as operator, but in contemplation of law if he is operating it through an instrumentality he himself is operating it. The test of whether one is the agent of the other depends upon the right of control of one over the other. The same principles of agency apply to the running of an automobile as apply to

any other field of action. The fact that the automobile is capable of causing so much damage has led the courts sometimes unwittingly to depart from the fundamental principles of principal and agent in order to hold owners responsible, the thought in the minds of the courts being that more responsibility should be visited upon the owner of such an instrument because of the potentialities for mischief. In some states, such as New York and Michigan, this has been done by statute.

Control as applied to the operation of an automobile may be broken down into its elements—the when, the where, and the how. Complete control means that the principal could dictate when the car was to be used, the destination or where it should go, the route it should take, and how it should be driven, whether slow or fast, behind or around traffic, inside or outside the lane of traffic, etc. It is not necessary that the principal should be physically able to so direct or control, but only that he has the right to. Such legal right of control arises out of the relationship of master and servant, where the servant is the operator of the car. In contemplation of law, an individual employing a chauffeur or a corporation employing a hundred truck drivers has the right of control over the servants driving their cars, although it would be, in fact, an impossibility to exercise it. Each of such servants is in contemplation of law the agent or instrumentality through which the master acts, and in contemplation of law each is acting in place of the, master or principal. Improvement in means of communication between a driver and an absent master may in time make possible actual driving by remote control. In such case the master will be actually doing what in law he already has the right to do.

The five ingredients of the problem before us to be taken into consideration to determine whether the wife had control of the husband (as driver of the car) during the trip to Bingham are: (1) The relationship of husband and wife; (2) the fact that they were on an errand to get a dress for

the wife; (3) the joint ownership of the car; (4) the fact that the wife and husband agreed that the husband should drive; and (5) four occupants of the car were on a trip to call on the mother. In this analysis we are only concerned with the question of who had the right of control of the car while it was on the journey. The purpose of the journey is only material in so far as it throws light on that question. The answer to this question must be obtained by an examination of the five ingredients above set out.

The relationship of husband and wife: In law the husband or wife is not the agent of the other although it may take less evidence than ordinary to show agency existing between them. *Kolensky* v. *DeFrancesco,* 102 Conn. 660, 129 A. 777; *Rodgers* v. *Saxton,* 305 Pa. 479, 158 A. 166, ■ 80 A. L. R. 280; *Roper* v. *Cannel City Oil Co.,* 68 Ind. App. 637, 121 N. E. 96; 2 C. J. 40, § 35. The mere fact that there was the relationship of husband and wife does not show agency.

The object of the journey: The object of the journey was to obtain a dress for the wife. In ascertaining the effect of this purpose, we shall treat it as if it were the sole purpose. The purpose of a trip is material only in so far as it throws light upon the question of agency or the question of who has the right of control during the trip. Many cases have loosely used expressions such as "for and on behalf," or "in the business of," or "for the benefit of." As stated before, the inquiry must be directed to the question of agency in the operation of the car rather than to the question of agency for the accomplishment of some ultimate purpose. In the case of an independent contractor a person may have the right of control over the act to be done at the destination or at the beginning, but another party or the driver himself may have control in the operation of the car during the trip. In the case of a taxicab the fare has the right to control the destination but not to control the operation of it. A guest being taken for a pleasure ride is having something done for his or her benefit or on her behalf but that does not

make the driver his or her agent. A husband may take his own car and do an errand for his wife, such as to fetch home a dress from the cleaners, but the wife has no control over the husband's operation of the car during the journey to obtain the dress. The husband may be the agent to procure the dress but not the agent to operate the car. If, in this case, the defendant had given some person some money to take that person's own car to get the dress, such person would have been, in a sense, on the business of the defendant or doing something for or on her behalf, but ordinarily there would be no agency. If I give a pedestrian a lift on my way downtown and when I arrive there find that he is going to the station and drive out of my way to take him to the station and an accident happens during the diversion from my business, that does not make me the agent of the pedestrian whom I accommodate. I still have the right of control during the journey of diversion. Therefore, the ultimate object of what is to be done at the end of the journey is not controlling, but simply a circumstance to throw light upon the question of whether there was the right of control during the journey. The inquiry must still be directed as to whether an agency existed in the operation of the car, or the more fundamental question of whether there was the right of control on the part of another during the time the car was operated. In the case of *Corn* v. *Kansas City, C. C. & St. J. Ry. Co.* (Mo. Sup.) 228 S. W. 78, where the object was to call for the daughter at the station, the husband owning and driving the car, the wife being in it did not make the wife responsible for the negligence of the husband, although he in a sense was on her business as well as his own; that being the getting of the daughter.

When there is a paucity of facts from which any inference as to agency or the lack of it can be had, solution may depend entirely upon presumptions. And these presumptions may, in many cases, not only serve to relieve the plaintiff of the duty of presenting evidence tending to show agency but may have the effect of substantive law. Thus, in this

case, where the defendant could probably produce no further facts to throw light on the question of who had the right of control because most likely neither she nor her husband ever entertained a thought about such right of control until this case came up, the presumptions which we lay down as applicable will probably be controlling. It is, therefore, quite necessary to enunciate rules regarding presumptions which will not be inconsistent with the fact situations in other cases.

If Mrs. Lavender had been the sole owner of this car and it was transporting her to a place for the sole purpose of getting her dress there would, without more, be raised the presumption that she was in control. In fact, this would be so even if it should be undisclosed as to what the purpose of the trip was. We have so concluded later in this opinion. Moreover, if she and her husband had been on a true joint venture she would have been considered as a principal. And this would have been true even though she had no interest in the car.

Since we shall next consider the effect of joint owners being present on a journey, we shall at this juncture analyze the effect of purpose of the journey, i. e., going for the dress, without at this time taking that element into account, but shall consider it as if Mr. Lavender, the driver, was the sole owner of the car. In this case it was for the purpose of fetching a dress for Mrs. Lavender. We do not think in such a case the presumption that there is an agency should be indulged. We will see from instances cited in this opinion that an owner driving his own car for the benefit of another who is present is just as consistent with the theory of independent contractor as it is with agency. Therefore, there is no reason why the presumption should be made one way or the other. Let the facts govern in such a case. A taxicab driver driving a person on an errand to get a hat is in the business of such person and driving for the benefit of such person. Therefore, without more being shown, an owner of a car driving it on the errand of another whether

that other is present in the car or absent does not, without more being shown, become the agent for the other *in the act of driving his own car.*

The question may be asked: If, when two are on a joint venture and the sole owner is driving, the passenger will be liable as a principal, why then, when the sole owner is driving and they are on the sole business of the passenger, is not the passenger a principal? Is not the sole business of the nondriver at least as controlling as the mutual or joint business of the two? The answer lies in this: In a true joint venture the agency is already there by virtue of the community of interests which attaches itself to the whole trip by reason of the type of the project that the trip is undertaken for, as will be explained later in this opinion. No agency need be presumed. It arises by virtue of the joint venture relationship where each is mutually the agent and principal of the other even for the purposes of operating the car. In case of the sole owner driving his car on the errand of another present in the car, the very question up for solution is whether or not there is an agency and whether by reason of the thing to be accomplished at the end of the journey such agency or right of control during the trip should be presumed. We hold that such element as the going for a dress would be a circumstance but, standing only with the other fact of a sole owner driving his own car, does not raise a presumption of agency in the driving of the car.

*Joint Ownership.*—An analysis of the effect of this relationship on control will be best served by first analyzing the situation as if the passenger was solely the owner. First, if any one, whether a husband or not, was solely the owner and was driving the car, there would be a very strong presumption that no one else had control over his actions, although even an owner driving his car may be the agent of another. Thus, where he hires himself and car to another and such other has power of control and direction. If one is owner and another drives and

the owner was not in the car at the time the accident occurred, the presumption in many jurisdictions would be that the driver was acting for the owner. See Berry on Automobiles (6th Ed.) p. 1124, § 1358 et seq., and cases cited thereunder.

The jurisdictions which hold this again divide on the question as to whether this presumption entirely disappears out of the case when any evidence is introduced which tends to show that the driver was not acting as agent of the owner. Some hold that it entirely disappears from the case and cannot be taken into account by the jury. *Potts* v. *Pardee,* 220 N. Y. 431, 116 N. E. 78, 8 A. L. R. 785; *Fallon* v. *Swackhamer,* 226 N. Y. 444, 123 N. E. 737. Others hold that it is still to be considered with other evidence by the jury. *Mahan* v. *Walker,* 97 N. J. Law, 304, 117 A. 609; *Griffin* v. *Smith,* 132 Wash. 624, 232 P. 929. The other line of authorities which hold that no presumption arises that the driver of the car is the agent of the owner where the owner is not present are found listed in Berry on Automobiles, supra, p. 1127, § 1359. Utah falls within this class. *Ferguson* v. *Reynolds,* 52 Utah 583, 176 P. 267; *McFarlane* v. *Winters,* 47 Utah 598, 155 P. 437, L. R. A. 1916D, 618; *Fowkes* v. *J. I. Case Threshing Mach. Co.,* 46 Utah 502, 151 P. 53. In this jurisdiction this is the case even though a member of the family is driving. It would be the case also whether a husband was driving a wife-owned car or the wife driving a husband-owned car the owner not being present in the car. In this jurisdiction the "family purpose" doctrine has not been adopted. *McFarlane* v. *Winters,* supra.

Having considered the state of the law in the case where another than the owner is driving the owner's car with the owner not an occupant, we come to a consideration of those cases where another is driving the owner's car where the owner is an occupant. Of course, it is elemental that where the chauffeur or servant of the owner is driving for and on behalf of the owner, the owner is re-

sponsible whether he is an occupant or not. The difficulty comes in the cases where there is no evidence of the relationship of agency between the driver and the owner occupant. Those jurisdictions which hold that there is presumptively an agency between the owner and a driver where the owner is not an occupant of the car at the time of the accident or those jurisdictions which hold the "family purpose" doctrine, a fortiori hold such presumption existed where the owner was an occupant but not driving. *Hammond* v. *Hazard,* 40 Cal. App. 45, 180 P. 46; *Brucker* v. *Gambaro* (Mo. Sup.) 9 S. W. (2d) 918; *Roland* v. *Anderson* (Mo. App.) 282 S. W. 752. At least one jurisdiction where there is no presumption that one driving is the agent of the absent owner holds that where the owner is an occupant there is a presumption of agency. *Shea* v. *Hemming,* 97 Conn. 149, 115 A. 686. And in jurisdictions where no rule has yet been laid down as to presumption of agency where the owner was absent, it has been held that an owner occupying a car, with another driving, raises the presumption that the driver was his agent. *Day* v. *Isaacson,* 124 Me. 407, 130 A. 212; *Louisville Lozier Co.* v. *Sallee,* 167 Ky. 499, 180 S. W. 841. It is submitted that the presumption would not be different in these jurisdictions if the owner's spouse was driving the car; the relationship of husband and wife in itself should not add or detract from the presumption arising from ownership, since agency cannot be presumed merely from that relationship.

In the following cases the nonowner spouse was driving while the soleowner spouse was an occupant of the car: *Donaghue* v. *Hayden,* 58 Cal. App. 457, 208 P. 1007, where there was some evidence of a broader agency between husband and wife and that the car was driven in Mrs. Hayden's interest. *Standard Oil Co. of Kentucky* v. *Thompson,* 189 Ky. 830, 226 S. W. 368, 370, which gives no reasons, but baldly states that the "appellee is chargeable with the negligence of his wife, who was his agent in the operation of his automobile at the time of the collision." *Kolensky* v. *De-*

*Francesco*, supra, where the court said the silence of the defendant wife and her husband, when they had an opportunity to show what the real relationship was regarding the handling of the car, aided the presumption of agency arising from ownership. *Willis* v. *Crays*, 84 Ind. App. 253, 151 N. E. 13, where the court said that the jury could infer agency from the fact that the defendant was the owner of the car, the wife of the driver, in sitting beside him permitting him to drive it at a high speed. The court expressly repudiates the doctrine that agency arises from the spouse relationship alone, and, citing *Smith* v. *Weaver*, 73 Ind. App. 350, 124 N. E. 503, repudiates the doctrine that there arises from ownership alone a presumption of agency and also discards the "family purpose" doctrine. So this case must rest alone on ownership plus the owner's presence. In *Lucey* v. *Allen*, 44 R. I. 379, 117 A. 539, 541, where the "family automobile doctrine" is enforced, it was held that the "owner is undoubtedly chargeable with the negligence of another member of the family who is driving, if the owner is a passenger, and it [the car] is being used for a purpose in the accomplishment of which the owner is interested. In such circumstances the relation of principal and agent arises between the owner and the member of the family driving the machine." In *Delaware & Hudson Co.* v. *Boyden* (C. C. A.) 269 F. 881, it was held that an owner-wife in the car driven by her husband was engaged in a joint enterprise and was chargeable with his negligence under the laws of Pennsylvania. It is not stated what the joint enterprise consisted of. In the case of *Wisconsin & Arkansas Lumber Co.* v. *Brady*, 157 Ark. 449, 248 S. W. 278, 280, the bald statement is made that: "Hosea Brady owned the automobile, and was in no sense a guest of his wife, so he had control, along with his wife, over the movements of the car." Ownership and presence of the owner were sufficient to show control of the driver by the owner. In Arkansas where the "family purpose" doctrine and imputed negligence to guests are discarded, it was said in *Johnson* v. *New-*

*man,* 168 Ark. 836, 271 S. W. 705, 707: "If the owner of a car in which he is riding permits some other person to operate it—no matter whether it is his wife or child or friend —there is no reason why the relation of principal and agent should not be held to be subsisting between them." In *Crawford* v. *McElhinney,* 171 Iowa, 606, 154 N. W. 310, Ann. Cas. 1917E, 221, the court held that where the husband-owner was being driven in his car by his wife on a pleasure trip to the fair grounds it was a common enterprise and he was liable; that it was by virtue of the husband's ownership and his control. There were some slight additional circumstances on which the court attempted to predicate control.

It is difficult in reviewing the above cases to fasten, in most part, on any definite reasons in the decisions for holding that an agency results from the presence of an owner in the car. In several of the cases there were slight circumstances beyond the mere owner's presence; in others there are loose statements of there being a "joint enterprise" or "common purpose," when the common purpose was only a destination or a pleasure ride such as any guest might participate in. Certainly where a driver invites several to go to a dance or agrees to carry them because he is going there himself, there is in a sense a common purpose; but no sound decision ever imputed the driver's negligence to the guests just because they were all pleasure riding and meant to enjoy themselves together or separately at the journey's end. Such a joint venture or common enterprise as makes occupants of a car mutual agents and principals in the operation of the car is one in which the business they are on or which they intend to do on the outcome of the journey involves such a community of interest and obligations as will make the trip itself an integral part of such venture, and therefore each throughout the trip is the agent of the other, not only for the purpose to be accomplished by the journey, but in the journey itself. The purpose for which they are being transported and the

thing which they intend to do must involve such a community of interest as to make each the agent of the other in the actual accomplishment of that final purpose, so that there is derived from the mutual agency involved in that final purpose a mutual agency in the control and operation of the car on the journey which is an inseparable incident from the purpose on which they are going, the purpose and the trip itself being considered as one whole transaction in which throughout there is a reciprocal agency or a cross-relationship of agent and principal. The nature of the thing to be jointly accomplished makes the trip itself a part of that purpose. Thus, where two or more are jointly interested in examining a piece of property or a proposition of which they may be probable joint purchasers or participants, or in which they are already jointly interested. It does not pertain to a case where they are all pleasure bound in which each will separately derive his pleasure in the measure in which he may absorb pleasure though perhaps through mutual concourse. In that sense a boatload of people bound for Coney Island are on a common purpose or enterprise. Too many cases have confused a joint enterprise as meant in the law with a situation which merely involves togetherness. *Fuller* v. *Mills,* 36 Ga. App. 357, 136 S. E. 807; *Corn* v. *Kansas City C. C. & St. J. Ry. Co.* (Mo. Sup.) 228 S. W. 78. Reference is also made to the case of *Rodgers* v. *Saxton,* supra, for a timely criticism of loose and inaccurate use of expressions without thought of the content which they imply. Of the cases above cited, those which placed the agency on the strict ground of a presumed control of the driver because of a presumption that an owner present in his car is exercising control over his own property are, to our minds, on the firmest ground. Such are the Kansas, Indiana, and Kentucky cases. See *Carpenter* v. *Campbell Automobile Co.,* 159 Iowa 52, 140 N. W. 225.

Some well-reasoned cases refuse to accept the presumption of agency merely because of the owner's presence. In Michigan, where the rule prevails that the negligence of a

driver of a private vehicle will be imputed to the occupant owner (*Colborne* v. *Detroit United Ry.*, 177 Mich. 139, 143 N. W. 32, and *Granger* v. *Farrant,* 179 Mich. 19, 146 N. W. 218, 51 L. R. A. [N. S.] 453), it was held in *Hartley* v. *Miller,* 165 Mich. 115, 130 N. W. 336, 33 L. R. A. (N. S.) 81, that an owner riding in his car which he had loaned to another was at the time of the collision "a mere guest in the automobile and not in any way responsible for its operation and control," recognizing that control is the essential element. It should be stated that the facts of this case strongly supported a bailment by the owner to another, and while the loan of the car still existed the owner consented, on the insistence of his borrower, to ride with him.

In *Zeeb* v. *Bahnmaier,* 103 Kan. 599, 176 P. 326, 2 A. L. R. 883, the court held that

"the mere fact of ownership and the mere presence of the owner at the time of the accident do not warrant a judgment for damages against the owner of the car."

The court further said:

"Unless some rational theory of principal and agent, or of master and servant, supported by substantial evidence, can connect the father with the act or delict of the son, the father is no more liable than a stranger. And this principle holds true whether the father is present or absent when the tort of the son is committed. If I do no more than permit my adult son to use my horse or my shotgun whenever he cares to do so, and if my son is conceded to be experienced in the management of horses and in the handling of shotguns, and is not known to be careless therewith, shall I be held liable if he in a moment of negligence rides down a pedestrian or shoots a neighbor's cow, merely because the horse or shotgun is mine and because I was personally present when the negligent mishap occured. There is no such rule of law in any twentieth century text-book. Any such rule of liability attaching to mere ownership of an automobile, if found in the decided cases, must have been announced when the judiciary were less familiar than now with that distinctively modern invention. Why should the mere presence of the owner of the automobile, which was in the possession, control, and exclusive management of another responsible adult at the time of the tort, subject the owner of the car to liability in damages?"

In *Watkins* v. *Clark,* 103 Kan. 629, 176 P. 131, the same court pays its respects to some of the loose thinking in some of the opinions in this wise:

"The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abondoned. The notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition. Courts were reluctant to ignore it, and as a result, an adaptation of the law of master and servant, and principal and agent, was resorted to, to explain the liability. If a man purchased an automobile and allowed his wife and his son and his daughter to use it, the use was his by virtue of representation, whether representation existed in fact or not. The deduction was facilitated by employment of the fine art of definition—putting into the definition of the term 'business' the attributes necessary to bolster up liability. So, if daughter took her friend riding, she might think she was out purely for the pleasure of herself and her friend, but she was mistaken; she was conducting father's 'business' as his 'agent.' As this incongruity became more and more apparent, a further concession was sometimes made. If the owner allowed a member of his family to use the automobile, he might not be liable, but it was 'presumed' the use was his by representation. If son took his best girl riding, prima facie it was father's little outing by proxy, and if an accident happened, prima facie father was liable. Some courts were inclined to get rid of the difficulty of resting liability on the one existing fact, ownership of the car, by declaring that the question of 'agency' was one for the jury, a process known in some quarters as 'passing the buck.' The sooner the courts settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized the business and the pleasure of the civilized world, the better it will be, not only for society, but for the courts."

In *Virginia Ry. & Power Co.* v. *Gorsuch,* 120 Va. 655, 91 S. E. 632, 633, Ann. Cas. 1918B, 838, a wife owner and occupant of the car was not liable for the negligence of her husband the driver, where she exercised no control. The court said:

"The relation of Mrs. Gorsuch to Mr. Gorsuch, under the circumstances above referred to, was that of bailor to bailee, and, until she resumed control of the property, the operation of the car was as completely within his control as if he had been the fee-simple owner thereof."

See, also, *Kellogg* v. *Church Charity Foundation of Long Island*, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas. 1913A, 883; and *Hathaway* v. *Mathews*, 85 Cal. App. 31, 258 P. 712.

Up to this point, excluding the Zeeb Case, supra, the cases cited above as holding that the passenger-owner spouse is not by virtue of this fact alone chargeable with the negligence of the driver spouse may be reconciled with the opposite holding cases on the ground that there were additional facts which actually negatived the idea of agency. But in the two Pennsylvania cases of *Rodgers* v. *Saxton,* supra, and *Klein* v. *Klein,* 311 Pa. 217, 166 A. 790, we have an express repudiation of the doctrine that the presence of the owner spouse in his or her car, driven by the other spouse, presumably makes the driver the agent of the owner. In the first case it was stated (305 Pa. 479, 158 A. 166, at page 168, 80 A. L. R. 280) :

"A joint or shared control of an automobile in which one is riding as a passenger does not necessarily arise from the passenger's marital relationship with the driver or from the fact that the passenger is the car's owner. ~ The inference that the owner of the car was the bailor and the driver was the bailee is an equally logical inference. * * * There is no rule of law which makes a bailment terminable upon the bailor's sharing with the bailee the use and enjoyment of the subject of the bailment. * * *

"The relation of principal and agent or that of master and servant does not necessarily arise from the fact that the wife owns the car which her husband is driving and in which she is a passenger."

In the latter case it was stated (311 Pa. 217, 166 A. 790, at page 791) :

"In a long line of cases, running at least from *Scheel* v. *Shaw,* 252 Pa. 451, 97 A. 685, to *Double* v. *Myers,* 305 Pa. 266, 157 A. 610, 611, we have consistently held, in cases not involving business automobiles,

that 'In an action to recover damages for injuries received from an automobile accident it is necessary for plaintiff to prove * * * not only that defendant was the owner of the car, and that the driver was his servant, but also that such servant was at the time engaged in the master's business.' No such proof was produced here.

"This rule applies with peculiar force when the parties are husband and wife. Appellees' counsel contend, however, that the relation between appellant and her husband, in respect of driving the car when this accident happened, was that of principal and agent, or of master and servant, and hence she is liable for the negligence of her husband, as her agent or servant. We think otherwise. Although such relations, legally speaking, may exist between a husband and wife, it is only in rare instances that they do. While the unity, which for so long a time was held to exist between them, has, by statute, been modified to a considerable degree, in matters like the present it has not been changed at all. In the use of the property of each other, no one, least of all the husband or wife, thinks of the husband as being the principal or master of the wife, or the wife as being the agent or servant of the husband, or vice versa, and the law must recognize this fact in exactly the way that the world at large recognizes it, for such is actually the relation of the parties. For convenience of expression, the law may use legal terms in stating that relationship; for instance, in the present situation, it may be referred to as that of bailor and bailee (*Rodgers* v. *Saxton*, 305 Pa. 479, 158 A. 166, 80 A. L. R. 280), but this does not alter its actual character in the slightest degree. The husband and wife were using the wife's automobile for the joint pleasure of themselves and their friends, and not otherwise, and, under such circumstances, when the husband is driving, 'even with his wife present, the presumption is that he is in control of the car, and, in the absence of evidence to the contrary, he is solely responsible for its operation.' "

This is an extension of the rule laid down in our own cases of *Ferguson* v. *Reynolds* and *McFarlane* v. *Winters*, supra.

We believe that the better rule is that where an owner is an occupant of his own car there arises a rebuttable presumption that he has control and direction of it. It is not as if he were absent as in the case of *McFarlane* v. *Winters*, supra, where this court refused to indulge the presumption. A person being conveyed by his own vehicle is presumed to control his own property in

his own transportation. Moreover, as a practical matter the rule is a salutary one. A person injured by the negligence of the driver ordinarily cannot know the real relationship between the driver and the passenger owner. They may not know it themselves. If the presumption of agency is indulged, it throws upon the proper parties the burden of producing evidence to negative the relationship rather than upon the plaintiff to produce evidence to prove it. The very fact that, as stated in the Pennsylvania case of *Rodgers* v. *Saxton,* supra, there can be an inference of either agency or bailment from the presence of an idle sole owner in the car, makes necessary a presumption which will throw on the owner whom it is sought to hold responsible the burden of going forward. It is now necessary to see what effect this presumption has on a situation where two instead of one own a car and both are present.

Agency does not arise from joint ownership alone. *Mittelstadt* v. *Kelly,* 202 Mich. 524, 168 N. W. 501. In the case of *Hamilton* v. *Vioue,* 90 Wash. 618, 156 P. 853, 854, L. R. A. 1916E, 1300, it was held that:

"The contention that joint ownership of itself establishes joint liability for negligence is unsound."

*Knight* v. *Cossitt,* 102 Kan. 764, 172 P. 533. Joint ownership in itself not raising an agency, does not the presence of the joint owner in the car raise an agency? It is submitted that it would not in those states holding as Pennsylvania does. If we take the presumption stated in the beginning of this opinion, that an owner driving is presumed to be in control of the machine, and place it in juxtaposition with the presumption that a sole owner present but not driving is presumed to be in control through the driver, we have two inconsistent presumptions unless it can be considered that both owners have a joint control. It is possible to take both presumptions together and hold that there is joint control or to hold that the presumption that an owner actually driving has control is

so paramount as not to be disturbed by the fact that a joint owner is riding alongside him unless it is actually shown that such co-owner participated in control.

It is possible at this point to come to two different conclusions. Both presumptions can be given an office, and both joint owners be held to share in the right of control; that is, the owner driving by virtue of the presumption that an owner actually driving has the right of control, and the co-owner riding beside him by virtue of the presumption that an owner present in the car and not driving also has the right of control. On the other hand, an equally logical conclusion may be reached to the effect that the presumption that an owner actually driving is not only in complete physical control but has the sole right of control even though a co-owner is riding beside him. In *Seiden* v. *Reimer,* 190 App. Div. 713, 180 N. Y. S. 345, it was held there was joint control on the theory that the passenger-joint-owner-father and his co-owner son who was driving were engaged in a common enterprise in the driving of the car for their joint pleasure as well as for the pleasure of a daughter who was also a passenger. It is submitted that such reasoning would hold the daughter as a joint venturer. She was likewise a participant in the pleasure ride. Because of decisions like this, we earlier in this opinion paid our respects to the wrong application of the joint venture principle. What we above said applies to the Seiden Case.

In the case of *Switzer* v. *Sherwood,* 80 Wash. 19, 141 P. 181, Ann. Cas. 1917A, 216, where the defendants were co-owners, one driving and one a passenger at the time of the accident, the court held them both liable but strictly under the authority of *Birch* v. *Abercrombie,* 74 Wash. 486, 133 P. 1020, 50 L. R. A. (N. S.) 59, modified (Wash.) 135 P. 821, on the "family use" doctrine. In the case of *Apperson* v. *Lazro,* 44 Ind. App. 186, 87 N. E. 97, 88 N. E. 99, it was held that the jury was correct in holding co-owners liable, but the facts upon which the jury arrived at the general verdict against both defendants were not stated in the opin-

ion, nor was the co-ownership at all discussed or mentioned beyond the mere statement that the jury's verdict should not be disturbed.

In *Archer* v. *Chicago, M., St. P. & P. Ry. Co.*, 215 Wis. 509, 255 N. W. 67, 69, 95 A. L. R. 851, it was held that a joint non-driving owner present in the car was liable, but it was put partly on the ground that the parties were engaged in an "enterprise in which they were jointly interested." It appeared that they were returning home from visiting a married daughter. In *Paine* v. *Chicago & N. W. R. Co.*, 217 Wis. 601, 258 N. W. 846, 848, the car was owned by the husband and wife as in the instant case. The parties were returning home from a card party at the time of the accident. The court said: "These facts bring the case squarely within the doctrine of *Archer* v. *Chicago, M., St. P. & P. Ry. Co.* [215 Wis. 509], 255 N. W. 67 [95 A. L. R. 851], in which it was held that under such circumstances there is a joint adventure and a mutual agency requiring that the negligence of the driver be imputed to the co-owner."

In our judgment the common purpose—in one case to visit a sick daughter, in the other to go to a card party—do not constitute a "joint venture." If so, every guest invited and taken to a dance is in a joint venture. The parties are riding together for the common purpose of getting to a destination where each separately engage in a like objective but not a joint venture. If the Archer and Paine Cases are decided on the joint venture theory, the negligence of the driver in this case can be imputed to Mrs. Fox, the plaintiff, as well as to Mrs. Lavender, because in this case they were all bent on the common purpose of visiting the mother of the two women. We venture the observation that had these two cases as well as the Seiden Case, supra, been put on the ground that a co-owner present in the car is presumed, with the driving co-owner, to have joint right of control, a presumption arising from the joint possession that two joint

owners both present are assumed to have, the decisions would better stand criticism.

In *Coleman* v. *Bent,* 100 Conn. 527, 124 A. 224, 225, it was said:

"What sort of an arrangement will make the parties to it joint adventurers in the operation of the vehicle in which all are riding is well settled. The typical case is where two or more jointly hire a vehicle for their common purpose and agree that one of their number shall drive it. In such a case the possession of the vehicle is joint and each has an equal right to control its operation. The better considered cases hold that such common possession, and common right of control, resulting in common responsibility for negligent failure to control, are the earmarks of the legal relation of a joint adventure in the operation of the vehicle."

Here is a typical case where the relation of premise and deduction is reversed. The deduction of joint control arises from a joint venture and not joint venture from joint control. If once joint control in the trip is proved, there is no need of proving a joint venture. There was no need in the Coleman Case of holding that "common possession and common *right of control,* resulting in common responsibility for negligent failure to control, are the *ear marks of the legal relation of a joint adventure in the operation of the vehicle."* The mere determination that there was joint control results in the conclusion that there was joint responsibility for negligence. The case of *Clark* v. *Town of Hampton,* 83 N. H. 524, 145 A. 265, 269, 61 A. L. R. 1171 states:

"If this evidence was accepted as true, it showed a situation where, for purposes of present use and control, the plaintiff stood in the position of a part owner in common with Swanton. In this situation the plaintiff and Swanton proceeded to use the car for their mutual benefit. This would plainly amount to such a joint control that each party would be the agent of the other in the conduct of their common undertaking."

In this case the two owners with other common owners of the car used it to go from their camp to their work. This was a common purpose, but not a joint venture. Had the

court put the decision purely on the basis of a common possession springing from a common ownership which gave rise to a presumption of joint control and therefore mutual agency, without resort to a so-called common undertaking, we think it would have rested on firmer ground. The court mentions the case where two persons jointly hire a car from which the inference of joint control arises, and then says:

"This rule certainly is not less applicable where the right of control vested in the respective parties, is more extensive [because of joint ownership] than in the case of those who hire for a single occasion. No case has been cited or found holding that common owners, using the car for a common purpose, both being present, are not responsible, each for the other, as to the operation of the car."

In the case of *Derrick* v. *Salt Lake & Ogden Ry. Co.*, 50 Utah, 573, 168 P. 335, 337, Merritt owned and was driving the car. The plaintiff and another, passengers therein, were salesmen representing different companies all bound for the same destination. The expenses of the trip were to be prorated between them. This court held that the automobile trip was a joint affair and that "their rights to direct and govern the conduct of each other in relation thereto were coextensive. Each had a voice and the right to be heard in regard to the details of the trip." The negligence of Merritt was held to be imputable to the plaintiff. If Merritt had taken a fixed sum from each to take them to Ogden, it being his car and he the driver, would there have been a joint right of control? If so, it is difficult to see why a passenger would not be liable for the negligence of a taxi driver. If, instead of a fixed sum from each party, would the proration of expenses make each liable for the negligence of the driver? The Derrick Case answers in the affirmative. Certainly, if the joint sharing of expenses of a trip in which all are bound for a common destination but for separate purposes makes each the agent for the other in controlling the car, a fortiori, a joint possession of the car would make each liable. This principle seems to be recognized in one of the "illustra-

tions" of a joint enterprise contained in Restatement of the Law of Torts, vol. 2, § 491, Illustration f, where it is stated:

"The fact that the driver and another riding with him are in joint possession of the vehicle is sufficient to make any journey taken by them therein, a joint enterprise irrespective of whether the journey is or is not made for a common business purpose. This is so not only when the joint possession arises from a joint hiring, but also when it results from a joint ownership."

It should be noted that the fact of joint possession makes the trip itself a joint enterprise without more, as distinguished from the effect of a joint business enterprise for which the journey is taken which would also make the joint participants in the trip mutual agents regardless of joint possession or ownership. Earlier in this opinion we considered the type of such joint enterprise from which would arise the right of joint control during the trip and observed that many cases seemingly failed to recognize the difference between such a type of joint enterprise and the situation where the participants in a common journey were all going for common purposes separately to be carried out such as dancing, card playing, visiting a daughter, etc.

The actual joint possession from which joint control is inferred is not merely common presence in a car. It arises from a joint hiring or a joint ownership. One who jointly possesses an article with another has joint control of it on the assumption that he who has possession of an article has control of it. Joint owners both present in a car presumably have joint possession of the car. From such joint possession, the right of joint control follows and from this right of joint control of the article of which they are jointly possessed, an agency arises which makes the nondriving joint owner present in the car responsible for the negligence of the driving joint owner.

In this case, the fourth ingredient dealing with the agreement of the husband and wife that the husband should drive is hardly material. Whether it was at the husband's or the

wife's request or by agreement between them, or by
his assuming the wheel and she silently acquiescing,
makes no difference. It is not necessary to discuss
the fifth ingredient, to wit, that the four occupants in the
car were on a trip to call on the mother. Suffice it to say
that according to some of the cases such as *Archer* v.
*Chicago, M., St. P. & P. Ry. Co.*, supra, and *Paine* v. *Chicago
& N. W. R. Co.*, supra, and *Coleman* v. *Bent*, supra, joint
owners traveling together for such a common purpose would
be reciprocal agents. We prefer to put this decision on the
ground that joint owners both present in the car, without
more, raises a presumption of a joint possession and there-
fore joint control from which arises a reciprocal agency.

To sum up, when a sole owner is driving it is presumed,
without more, that he is in control and has the complete
right of control; when the sole owner is present in the car
and another is driving, it is presumed, without more
being shown, that the sole owner has the right of con-
trol, and that the driver is driving for him, that is,
as his agent. If two or more joint owners are in the car,
they will be presumed, without more shown, to have joint
right of control and therefore the driver will be presumed
to be driving for himself and as the agent of the other
present joint owners. When one is driving on a true joint
venture for himself and another or others, then such other
or others will be liable regardless of whether the person
driving is sole or joint owner or not an owner at all.

All the presumptions which we have laid down above are
presumptions rebuttable by evidence. When the evidence
has arrived at the point where the presumptions arise, they
serve the purpose of casting upon the defendant the
burden of going forward. The burden of proving
the ultimate fact of agency remains throughout with
the plaintiff, but if nothing more than these presumptions
are in the case in respect to agency at the end of the trial,
they will serve to prove that issue.

It transpires, therefore, from what has been stated in this opinion, that the judgment must be reversed, and the cause remanded to the district court of Salt Lake county with directions to grant a new trial. Such is the order. Appellant to recover costs.

ELIAS HANSEN, C. J., and FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, Justice (dissenting in part).

I am not so much disposed to battle the result reached by the prevailing opinion as I am what seems to be a concession that produces the result. Once the rule of law is determined, the matter of applying the evidence thereto is a matter about which we may and often do honestly differ. Notwithstanding the fact that different results have been arrived at, at different times during the consideration of this case, and that sometimes the result has, by a majority, at least tentatively, been one way and at times another, there never has been unanimity. I compliment my brethren of the court upon the various analyses made, the diligence in the struggle for a satisfactory result, and the resourcefulness and skill with which precedent is marshalled. The arguments generally, barring one, present a good cause.

I am, notwithstanding a desire to agree with my associates, unable to harmonize with the following statement made in the course of the opinion:

"In the case of *Derrick* v. *Salt Lake & Ogden Ry. Co.*, 50 Utah 573, 168 P. 335, 337, Merritt owned and was driving the car. The plaintiff and another, passengers therein, were salesmen representing different companies all bound for the same destination. The expenses of the trip were to be prorated between them. This court held that the automobile trip was a joint affair and that 'their rights to direct and govern the conduct of each other in relation thereto were coextensive. Each had a voice and the right to be heard in regard to the details of the trip.' The negligence of Merritt was held to be imputable to the plaintiff. If Merritt had taken a fixed sum from each to take them to Ogden, it being his car and he the driver, would there have been a joint right of control? If so, it is difficult to see

why a passenger would not be liable for the negligence of a taxi driver. If, instead of a fixed sum from each party, would the proration of expenses make each liable for the negligence of the driver? The Derrick Case answers in the affirmative. Certainly, if the joint sharing of expenses of a trip in which all are bound for a common destination but for separate purposes makes each the agent for the other in controlling the car, a fortiori, a joint possession of the car would make each liable. This principle seems to be recognized in one of the 'illustrations' of a joint enterprise contained in Restatement of the Law of Torts, vol. 2, § 491, Illustration f, where it is stated:

" 'The fact that the driver and another riding with him are in joint possession of the vehicle is sufficient to make any journey taken by them therein, a joint enterprise irrespective of whether the journey is or is not made for a common business purpose. This is so not only when the joint possession arises from a joint hiring, but also when it results from a joint ownership.'

"It should be noted that the fact of joint possession makes the trip itself a joint enterprise without more, as distinguished from the effect of a joint business enterprise for which the journey is taken which would also make the joint participants in the trip mutual agents regardless of joint possession or ownership."

If the prevailing opinion indorsed fully the doctrine of the Derrick Case, I could feel more at ease about the situation, though not satisfied. But to cite the Derrick Case as authority and then by a pointed thrust have a taxi driver commit mayhem thereon, and then send the wounded victim careening down the corridors of legal precedent to wander as a hybrid, uncertain and discredited, into the precincts of righteous causes until it either dies of infected wounds or until the magic hand of healing indorsement again revives it and gives it life and vitality among its associates, makes one wonder why the mutilated victim were not killed outright, or, if not, why it should be consigned to a long lingering punishment. Were it not for the Derrick Case and the "illustration" quoted from the Restatement of the Law, the prevailing opinion, judging from the argument and cases cited, would have ended differently.

If the Derrick Case was rightly decided, it should stand as a precedent. If it was wrongly decided, it should not be

indorsed and then discredited, or discredited and then approved. Personally, and in the present instance, I am riding with the taxi driver.

I presume no one questions the joint enterprise doctrine as found in the Restatement of the Law of Torts, vol. 2, § 491, p. 1273, as follows:

*"Any one of several persons engaged in an enterprise is barred from recovery against a negligent defendant by the contributory negligence of any other of them if the enterprise is so far joint that each member of the group is responsible to third persons injured by the negligence of a fellow member."*

The introductory statement in the volumes of the Restatement of the Law says:

"The accuracy of the statements of law made rests upon the authority of the Institute. They may be regarded both as the product of expert opinion and as the expression of the law by the legal profession."

Introduction, Restatement, Law of Torts, vol. 2, p. ix. The Restatement of the Law carries and should carry great weight.

Following the above italicized quotation, which appears in blackfaced type in the Restatement, there are "comments'" and "illustrations." Among the illustrations is the quoted paragraph in the prevailing opinion from section 491, page 1277, Restatement of the Law of Torts, supra, as follows:

"f. *Joint possession of vehicle.* The fact that the driver and another riding with him are *in joint possession* of the vehicle is sufficient to make any journey taken by them therein *a joint enterprise* irrespective of whether the journey is or is not made for *a common business purpose.* This is so not only when *the joint possession* arises from a joint hiring but also when it results *from joint ownership.*" (Italics added.)

Whether or not the quoted illustrative comment is applicable or is still a matter in the unsettled field of the law is

a matter about which we have the right to differ. But applied, as I understand the prevailing opinion, proof that the driver of an automobile and another riding with him are "in joint possession" or in "joint ownership" on a journey creates a "joint enterprise" and is therefore sufficient to take a case to the jury irrespective of the purpose, destination, or control of the route taken. Whether or not the italicized phrases "in joint possession," "a joint enterprise," "a common business purpose," "the joint possession," and "from joint ownership," are intended coupled with a journey to have the carrying power of a "prima facie" case, a conclusion of law, a conclusion of fact, or an inference of fact, or whether they need further definition before we are at liberty to treat them as facts, or conclusions from facts, or conclusions of law, or a statement of the law, to say the least, to my mind, creates a disturbing situation.

Partially and briefly indicating the difficulty I have in harmonizing the Derrick Case and the illustrative statement above quoted with that field of the law of torts relating to negligence is: That it is fundamental that liability grows out of an act or a failure to act when it is one's duty to act. Negligence arises out of an unintentional injury. The liability for such injuries usually find their foundation in personal responsibility for an act where the party either controls the act or had the right to control, or where the responsibility imposes the duty to act and the party either fails to act or to have others act, whose acts or failure to act in the premises it is his right or duty to control.

"Negligent conduct may be either: (a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another, or (b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under duty to do." 2 Restatement of the Law of Torts, § 284.

No definite meaning is attached to the terminology, "joint possession" or "joint ownership" as related to a vehicle in

use when the relation to be established is that of a "joint enterprise."

As illustrating the difficulty arising out of the use of such phrases without a terminology understanding, the following quotations are submitted:

"A most difficult question of terminology was presented in connection with the word 'interest.' In common and legal use, besides indicating the rate of return for the hire of money, it is employed to designate two important and distinct things. When we speak of a person having an interest in something as land or chattels, we may mean on the one hand that he has a certain desire in respect to it, as, 'I have an interest in having a good house on the lot adjoining mine,' or on the other, that the law recognizes that he has in respect to it one or more of varying aggregates of rights, privileges, powers and immunities, as 'He acquires an interest in Blackacre.' In the first sense it is a factual expression; in the second, a statement of legal relation. In the Restatement of the law of Contracts, Property and other subjects, except Torts, it is rarely necessary to use the word in its factual sense and when the necessity arises it is comparatively easy to have the context clearly indicate the particular sense in which the word is employed. On the other hand, with the Restatement of Torts it is constantly necessary to use the word 'interest' in its factual sense. To use any other word but 'interest' would necessitate considerable circumlocution or the invention of a new word." 1 Restatement of the Law of Torts, p. xvi.

"The use of the word 'presumption' by so many of the courts in speaking of the effect of evidence of possession of a deed by the grantee or the recording thereof, is perhaps somewhat misleading. 'No word in the legal parlance' says the author in 1 Jones Comm. Evidence (2d Ed.) 49, 'is used in a greater variety of senses, or more frequently misused, than the word "presumption." Confusion of use extends, in fact, beyond that term and includes as well the companion words "assumption" and "inference." ' On page 71, the author, speaking of 'presumptions of law and of fact,' further says that 'the authorities which have considered the question as to the distinction between a presumption of law and a presumption of fact are far from clear and it is difficult to deduce from them any rule or well defined distinction.'

"The author draws the distinction that 'a presumption of law is in reality a rule in some particular branch of the substantive law, a general maxim of jurisprudence, or an assumption by the court of

the existence of a fact not proven in order to facilitate and expedite judicial action.'

"So in this jurisdiction (*Ryan* v. *Union P. R. Co.*, 46 Utah 530, 151 P. 71; *State* v. *Green*, 78 Utah 580, 6 P. (2d) 177; *In re Newell's Estate*, 78 Utah 463, 5 P. (2d) 230) a 'presumption of law' is a rule of law, casting the burden of proof on him against whom the presumption operates, but when the facts and circumstances are shown concerning which the presumption is indulged, the presumption ceases and the controversy is to be decided by the weight of the evidence adduced. A 'presumption of fact' says the author referred to, 'is, in reality nothing more than an inference demanded by logic from facts and circumstances in evidence,' and usually is a question of fact, and thus different from a 'presumption of law' has evidentiary value. The proposition is well put by Professor Thayer in his treatise on Evidence (p. 334):

" 'It must be remembered always that many widely different things are called "presumptions," ' and while a presumption arising in the absence of evidence is never to be weighed as evidence, yet 'where, on the other hand, the "presumption" raised by law embodies within it because of the particular set of facts to which it applies, or comes into being at the same time as, a logical inference or conclusion deducible from the evidence so far introduced, it is not the rule that such accompanying inference is not to be weighed and considered by the jury. No court would so contend, for to deny the effect of the inference would be to deny any efficacy whatever to circumstantial evidence in the face of the most trifling rebuttal. But it is the inference which stands and the evidence upon which such inference rests which is to be weighed, and not that merely incidental rule of law termed a "presumption" which came into being and operated at that point in the trial only to shift the burden of going forward with the evidence.' Jones Comm. on Ev. (2d Ed.) § 32." *Chamberlain* v. *Larsen*, 83 Utah 420, 436, 29 P. (2d) 355, 362.

The use of the phrases "joint possession" and "joint ownership" as related to a "joint enterprise" by two or more riding in a vehicle, "without more," causes one to hesitate as to whether such negligence as makes one liable rests in facts or in presumptions. Are these words used in their factual sense or as a statement of a legal relation?

Or whether the negligence of a driver of an automobile being conceded, that the fact of another riding with him who jointly owns the automobile without more proof fur-

nishes facts sufficient from which the court is required to instruct the jury that the journey constitutes a joint enterprise, and being a joint enterprise, the court is required to instruct that the only question for the jury is the measure of damages. Further, if the matter goes to the jury, may the jury infer that B is the agent of A because A and B are riding in an automobile together, which automobile is either jointly owned or jointly possessed by them? The fact A and B are riding together is not a fact from which alone the inference of a legal relation of agency may arise. Add to the fact that A and B are riding in the same automobile— the further fact, which is really a legal relation, that they jointly own, or jointly possess, the automobile—may the jury, "without more," infer from the fact of riding and the factor of mixed fact and law, that of "joint possession," or "joint ownership," and draw the further inference of fact if it is a jury matter, or find the legal relation that the driver of the vehicle is the agent of the joint owner riding with him? If so, this matter of joint enterprise is easily established, and it is a risk to hire or lend one's automobile to another and then ride with him, or to jointly own an automobile and ride in it with the joint owner, or with one to whom the other joint owner may have loaned or rented it. It is difficult to see how the matter of "joint possession" or "joint ownership" as related to a "joint enterprise" may be distinguished from an expense sharing of an automobile journey as also given in 2 Restatement of the Law of Torts, § 491, illustrating, p. 1277:

"The fact that two or more persons who do not jointly hire or own a car, agree that each shall pay a substantial share of the expenses of a particular trip does not of itself make the trip a joint enterprise. When, however, there are one or more of the following additional factors the determination whether there is a joint enterprise is a question for the jury subject to the power of the court to see to it that the jury reaches a reasonable conclusion. These factors are: (1) A common destination; (2) a power to determine or change the route from time to time by mutual agreement, and, (3) the fact the trip is for a common but non-business purpose."

In a matter of joint possession or joint ownership, it being an unescapable fact that only one person at a time may have actual physical control of the driving of an automobile, it is difficult to see why a "common destination," "power to determine or change the route," and "purpose" of the trip are not factors involved in determining a joint enterprise.

For the reasons stated I cannot concur in that part of the opinion indicated.