ARCHER, Respondent, vs. CHICAGO, MILWAUKEE, ST. PAUL
& PACIFIC RAILROAD COMPANY and another, Appellants.

*May 9—June 5, 1934.*

510

For the appellant Chicago, Milwaukee, St. Paul & Pacific Railroad Company there were briefs by *Bender, Trump, McIntyre & Freeman* of Milwaukee, and oral argument by *Rodger M. Trump.*

For the appellant Dallas L. Archer there was a brief by *Hannan, Johnson & Goldschmidt,* attorneys, and *Martin R. Paulsen* of counsel, all of Milwaukee, and oral argument by *Mr. Paulsen.*

For the respondent there was a brief by *Lines, Spooner & Quarles,* attorneys, and *L. S. Clemons* of counsel, all of Milwaukee, and oral argument by *Mr. Clemons.*

WICKHEM, J.   The accident which gave rise to this action occurred about ten o'clock at night at the intersection of West Greenfield avenue with the tracks of the defendant railroad company in West Milwaukee.   The car in which plaintiff was riding collided with a box car that was being backed across the street.   There was no light at the end of the box car, and no attack is made upon the finding of the jury that the flagman did not give proper warning of the approach of the train.   The car was owned by plaintiff and her husband jointly.   Both were designated as the named assured in the liability policy upon the car.   The evidence is that sometimes plaintiff would drive the car for her husband and at other times he would drive the car for her.   On the occasion in question, plaintiff and her husband, the latter driving and the former riding in the rear seat, had driven to West Allis to visit a married daughter.   At the time of the accident they were returning to their home.   No attack is made upon the finding of the jury that the defendant Dallas Archer, husband of plaintiff, was negligent with respect to management, control, and lookout.

On behalf of the defendant Archer it is urged that plaintiff was guilty of contributory negligence as a matter of law, and that she assumed the risk of injury as a matter of law.

Numerous errors are also assigned with reference to instructions and manner of submission of the issues to the jury. On behalf of defendant Railroad Company it is urged that the evidence clearly points to the existence of a relationship between plaintiff and her husband that results in his negligence being imputed to her; that upon the occasion in question he was her agent to operate the car, and that under familiar principles of agency his negligence is her negligence. Since this action was tried upon the theory that plaintiff was a guest and her husband the host, and since the nature of their relationship to each other vitally affects the conclusions as to liability in this case, the contention of the defendant Railroad Company will first be considered.

The contention is based upon the fact that plaintiff and defendant Archer were joint owners of the car, and upon the occasion in question jointly interested, first, in visiting their daughter, and, immediately before the collision, in returning to their home. It is contended by plaintiff that neither joint adventure nor agency can be predicated upon a purely social relationship. *Brubaker v. Iowa County,* 174 Wis. 574, 183 N. W. 690; *Sommerfield v. Flury,* 198 Wis. 163, 223 N. W. 408. *Crossett v. Goelzer,* 177 Wis. 455, 188 N. W. 627, and *Papke v. Haerle,* 189 Wis. 156, 207 N. W. 261, are cited to the proposition that neither the relationship of the parties nor the ownership of the automobile determines the question of agency, and *Enea v. Pfister,* 180 Wis. 329, 192 N. W. 1018, and *Philip v. Schlager,* 214 Wis. 370, 253 N. W. 394, are cited to the effect that the presumption of agency arising out of ownership is a mere rule of procedural policy throwing the burden of going forward with the proof upon the owner to establish that the driver was not his agent. None of these cases is in point here.

In this case two circumstances are present which vitally affect the legal relations of the parties. The first is that the parties jointly owned the car, and the second is that they were engaged in an enterprise in which they were jointly

interested. At the time of the accident each was exercising, so far as physically possible, joint ownership, possession, and control of the car. Obviously, both could not drive the car at once, and it was necessary that one of them assume this duty. On this occasion it happened that the husband drove. On others the wife had driven, and the evidence is that, considering their whole use of the car, neither knew which drove the most. It is evident that the selection of the driver was not based upon any important considerations, and simply constituted a surrender to the physical limitations heretofore referred to. Such a state of facts did not result in a host-guest relationship. It could not be true that as often as husband and wife relieved each other in driving upon a single trip, the person moving into the driver's seat would at once become the host and the other a guest, and that the relationship would be reversed upon each such change. It is impossible to escape the conclusion that the husband in this case was driving not only in the exercise of his right as a joint owner, but on behalf of his wife, who was also an owner and equally interested in the trip. Under these circumstances it is clear that plaintiff and defendant Archer were engaged in a joint enterprise, and that the negligence of Archer is imputed to his wife.

In Restatement, Torts (Tent. Draft No. 10), § 30, comment f, it is stated:

"The fact that the driver and another riding with him are in joint possession of the vehicle is sufficient to make any journey taken by them therein a joint enterprise irrespective of whether the journey is or is not made for a common business purpose. This is so not only where the joint possession arises from a joint hiring but also where it results from a joint ownership."

This is a comment upon a section dealing with imputed contributory negligence. These considerations compel the conclusion that upon the undisputed evidence, the negligence of plaintiff's husband, the defendant Archer, is imputed to

her and that this bars her recovery against the defendant Railroad Company.

We now proceed to a consideration of the liability of defendant Archer to plaintiff. While the action was tried upon the theory that plaintiff was her husband's guest, this would not be prejudicial to defendant if the liability of the latter, as her agent or *quasi*-agent, depends upon the same considerations. It is our conclusion that, upon the occasion in question, the relation of defendant Archer to plaintiff was analogous to that of a gratuitous agent. It is quite true that plaintiff had not the same right to control defendant that she would have if he had been nothing more than her agent. However, he was her agent in the sense that, in part at least, he was acting on her behalf and in her interest, and having assumed so to act he sustained an obligation to exercise due care, equal in quality and extent to that sustained by a gratuitous agent. In Restatement, Agency, § 379 (2), comment e, it is stated:

"The liability of gratuitous agents to their principals for failure to exercise care is determined by the same principles which apply to the liability of persons who are not agents and who gratuitously act for the benefit of others, such as gratuitous bailees and hosts rendering services to guests."

In Restatement, Torts (Tent. Draft No. 10), § 30, comment a, commenting upon the rule prescribing the condition under which the defense of imputed contributory negligence is available against members of joint enterprises, it is said that the section states only the principles which determine whether a plaintiff is barred from recovery against a negligent defendant by the contributory negligence of a third person with whom he is engaged in a joint enterprise. It proceeds:

"If the plaintiff is injured by the negligence of a defendant with whom he is engaged in a joint enterprise, the fact that they are so engaged does not bar his recovery."

As to the liability of one partner to another for negligent destruction of property, see *Newby v. Harrell,* 99 N. C. 149, 5 S. E. 284, 6 Am. St. Rep. 503.

In Restatement, Agency, § 415, comment b, it is said that an agent against whom a principal brings an action of tort for negligence has the defense of contributory negligence. Nor would there seem to be any reason why the doctrine of assumption of risk should not apply to limit the liability of such a gratuitous agent.

We conclude that it does not follow from the fact that defendant Archer's negligence is imputed to plaintiff, that she is thereby barred from recovering her damages against him. The relationship between the parties has the same legal consequences, so far as their liability to each other is concerned, as though the driver were the host and the plaintiff the guest. In view of these conclusions a submission of the case that would be proper in a host-guest situation would not be prejudicially erroneous in this case. Plaintiff is subject to the defense of contributory negligence, and is probably barred if she has assumed any of the items of negligence which constitute the foundation of her recovery, although in view of the state of the record, it is not necessary to determine this question.

The first contention of the defendant Archer is that plaintiff was guilty of contributory negligence as a matter of law. This contention cannot be sustained. The accident happened in the night-time; the box car which was being backed across the intersection was unlighted; the flagman gave no warning of its approach. Plaintiff had no greater duty than that of guest, and ordinarily the negligence of a guest is a question for the jury. *Tomberlin v. Chicago, St. P., M. & O. R. Co.* 208 Wis. 30, 238 N. W. 287, 242 N. W. 677, 243 N. W. 208; *Paine v. Chicago & N. W. R. Co.* 208 Wis. 423, 243 N. W. 205. Plaintiff was riding in the back seat of the car. She testified that she looked to the left and then looked in

the direction of the watchman's shanty; that she looked for the watchman and did not see him. She testified that she relied somewhat upon the absence of the watchman. The evidence is open to the inference that the train came upon the intersection while plaintiff was looking for the watchman. The accident happened at night, and the rule ordinarily obtaining in cases of unobstructed crossings,—that if she looked she must have seen, does not apply with full force in such a situation as is here presented. Under all the circumstances plaintiff's negligence presented a question for the jury.

The next contention of the defendant Archer is that plaintiff assumed Archer's negligence as a matter of law. This is based upon the contention that Archer had poor eyesight and poor hearing, and that plaintiff definitely acquiesced in the rate of speed at which he approached the crossing. With respect to Archer's defective eyesight, there is no evidence that his vision was not fully corrected by glasses, and no evidence that this defect had any causal relation to the accident. While Archer testified that his hearing was bad, there is likewise no evidence that this defect contributed to the collision. There is no evidence that plaintiff knew of his defective hearing, and she positively denies that he ever gave any evidence of deafness. We hold that there was no evidence sufficient to go to the jury that either of these alleged defects contributed to the collision or were assumed by the plaintiff. The jury found, upon sufficient evidence, that Archer was not proceeding at an improper rate of speed, and while there is evidence that plaintiff acquiesced in the rate of speed at which he was driving, the issue of assumption of risk in this respect is immaterial in view of the verdict of the jury. As a matter of fact, there was no issue of fact as to this since plaintiff testified that she was fully satisfied with the rate of speed that he was maintaining. Had the jury found that Archer was maintaining a negligent rate of speed, the conclusion would be unavoidable that plaintiff assumed this risk.

These conclusions also dispose of the contention that the trial court should have submitted to the jury questions as to whether Archer failed to see the flagman because of his defective eyesight, and failed to hear the warning claimed to have been sounded because of his defective hearing.

It is objected by defendant Archer that the trial court erred in submitting to the jury an omnibus question as to contributory negligence. This was error, *Gherke v. Cochran,* 198 Wis. 34, 222 N. W. 304, 223 N. W. 425. However, in this case there was no resulting prejudice to the defendant. There was only one item of negligence with respect to which there was an issue of fact for the jury. That was the question whether plaintiff maintained an adequate or proper lookout. It is clear that plaintiff did not warn her husband because she did not see the train, and the sole question for the jury was whether her failure to see was the result of a negligent lookout. In view of this, and of the complete and accurate instructions of the trial court, defendant Archer was not prejudiced by the submission of a general question.

Error is also assigned because the court failed to submit a question whether there was assumption of risk by the plaintiff. This assignment has been sufficiently disposed of by what has heretofore been said. There was no issue for the jury upon this point.

It is next contended that the verdict is fatally defective because of the form of the third question. This question reads as follows:

"3. Did the defendant Dallas Archer, just prior to the collision, fail to exercise ordinary care not to increase the danger assumed by the plaintiff, Mabel Archer, upon entering the automobile:

"(a) . . .

"(b) . . .

"(c) With respect to the speed at which he operated the automobile? Answer: No."

It is claimed that the form of this question makes it impossible to determine whether the jury concluded that Archer was not driving at an excessive speed, or whether they concluded that he was, and that plaintiff assumed the risk. A careful examination of the question does not justify the criticism. The jury were asked whether Archer failed to exercise ordinary care not to increase the danger assumed by plaintiff upon entering the automobile. It does not deal with acts of acquiescence by plaintiff which might have occurred after she entered the car, and those are the only acts in this case that can be contended to bear upon assumption of risk with respect to speed. An examination of the instructions of the court shows that the court instructed the jury with regard to excessive speed in precisely the same fashion as he would have instructed them had the question merely been, "Was Archer negligent as to the speed at which he drove the vehicle?"

It is further contended that the court erroneously instructed the jury on the issues of contributory negligence and assumption of risk. A detailed examination of this assignment would unduly extend this opinion without performing a corresponding judicial service. A careful examination of the instructions convinces us that no prejudicial error was committed.

The foregoing results in the conclusion that the judgment as to Archer must be affirmed.

*By the Court.*—The judgment is affirmed in so far as it awards the plaintiff recovery against defendant Archer, and reversed in so far as it awards plaintiff recovery against defendant Chicago, Milwaukee, St. Paul & Pacific Railroad Company, with directions to dismiss plaintiff's complaint as to this defendant.