**HORNE MOTORS, Inc., et al. v. LATIMER.**
No. 12946.

Court of Civil Appeals of Texas. Dallas.
Feb. 1, 1941.

Rehearing Denied March 8, 1941.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, for plaintiffs in error.

Chrestman, Brundidge, Fountain, Elliott & Bateman and J. A. Blakeley, all of Dallas, for defendant in error.

YOUNG, Justice.

Defendant in error, Russell O. Latimer, recovered judgment for $11,654.50 in a damage action, wherein Horne Motors, Inc., and D. C. Berry (plaintiffs in error) were defendants, and the latter parties have brought up the rather voluminous trial proceedings for review. To obviate an analysis of lengthy pleading, we will briefly outline certain material facts; issues being apparent from jury questions and answers, and the complaints of plaintiffs in error concretely stated in eighteen

several propositions. Referring to the parties as they were originally styled, or by name, we find the following: Horne Motors, Inc., was a corporation doing business at Longview, Gregg County, and dealing in Packard automobiles, with J. R. Horne, Vice-President and General Manager, O. H. Grissom, President, and plaintiff Russel O. Latimer, Secretary-Treasurer. On and prior to January 1, 1937, D. C. Berry, a company salesman, had interested a Mr. Sullivan in the purchase of a certain type Packard car, to the extent that a sale could be consummated on inspection. The particular model was not in stock at Longview, and on the afternoon of said day (plaintiff contends), he was instructed by Mr. Horne to accompany Berry and Sullivan to the Dallas agency, where delivery of the contemplated model could be made. Plaintiff's mission in making the trip, he alleged, was as an officer of the Corporation, and for the purpose of executing necessary instruments to the distributor in the transaction. The three, plaintiff, Berry and Sullivan, began the trip on the afternoon in question, each taking a turn at driving the company car. While traveling along the highway after nightfall, with misting rain and wet pavement, and just within the city limits of Edgewood, Van Zandt County, a Ford truck, driven in the same direction by W. D. Copeland, was encountered, resulting in a collision and serious injuries to Russell O. Latimer. At the time of the accident, Berry was at the wheel of the Horne Motors car, Sullivan sitting in the middle of the front seat, and plaintiff on the right-hand, the force of the impact hurling him bodily through the windshield and out onto the roadside. The suit brought by this injured party was against Horne Motors, Inc., and Berry, its salesman, under allegations of negligence, which are concisely reflected in the jury issues hereinafter to be detailed. However, the gist of both defendants' allegations and defenses should here be summarized: (1) Horne, General Manager of the company, denied that the Dallas journey had been authorized, but, on the other hand, expressly forbidden, as plaintiff and Berry had been drinking, and the trip was undertaken of their own accord; (2) the collision resulted, not from any negligence of Berry, but from the effect of blinding headlights of two approaching automobiles, whereby Berry could not see the Copeland truck until right upon it, which constituted sole proximate cause, or new independent cause thereof; (3) sundry acts of negligence on the part of Copeland were interposed, such as not operating his truck with visible taillights; (4) that Berry and Latimer were on a joint mission for Horne Motors, Inc., whereby any negligent handling of the car would be imputed to plaintiff; (5) that plaintiff's presence on the trip was either as an officer and "alter ego" of the Corporation, performing corporate duties, or as a fellow servant to assist Berry in a transaction for the benefit of their employer, and suit was not maintainable against defendants in either capacity; (6) in the alternative, contributory negligence of plaintiff was alleged. D. C. Berry urged defenses similar to those of Horne Motors, Inc., and motions for peremptory instruction of both the defendants were presented and refused at the close of the testimony.

The jury issues and answers were, in substance, that D. C. Berry was driving the Packard car at the time, in furtherance of the business of Horne Motors, Inc.; that plaintiff Latimer was directed by J. R. Horne, Manager of Horne Motors, Inc., to accompany said Berry on the trip to Dallas; that Berry was driving at a greater rate of speed than 20 miles per hour on the occasion, which was negligence and a proximate cause of the collision; Berry was also driving the car in excess of 45 miles per hour at the time, which was negligence and a proximate cause. Berry also failed to keep a proper lookout for trucks driving in the same direction on the highway at the time, which was negligence and a proximate cause of the collision; that plaintiff's injuries were not the result of an unavoidable accident; that plaintiff did not fail to keep a proper lookout for Copeland's truck; that defendant Berry was not driving to Dallas for the sole purpose of visiting his family; that plaintiff Latimer failed to protest against the speed at which the Packard car was being driven immediately prior to the collision, but such was not negligence nor did it proximately contribute to cause the collision; that just before the accident, the headlights of an eastbound automobile did not obscure the vision of the Packard car driver to the extent that he could not see the Copeland truck; that the burning headlights of such approaching car were not a new and independent cause of the collision; plaintiff was not intoxicated at and prior to the time of his in-

juries; the failure of plaintiff to keep a proper lookout was not negligence, or proximately contribute to cause the collision; that neither plaintiff nor D. C. Berry was making said trip for his own individual pleasure, nor was Latimer riding in the car as a guest of defendant Berry; that J. R. Horne, Vice-President and General Manager of defendant Corporation, did not refuse permission to either Latimer or Berry to undertake the Dallas trip on said date of January 1, 1937.

Defendants first argue that they were clearly entitled to peremptory instructions at the close of the testimony, in that, the participation of Russell O. Latimer in the unfortunate journey was as an officer of defendant Corporation, charged with essential corporate duties touching the sale of the car through the Dallas agency; and was the company's vice-principal or "alter ego"; wherefore, his suit, in effect, was one by the Corporation against itself for the wrongful acts of its own servant Berry, and not maintainable; or, on the other hand, the relationship between plaintiff and Berry at the time was as fellow servants, each engaged in an authorized duty for the benefit of their common employer, i. e., the consummation of an automobile sale; and, being fellow servants, the negligence of one was imputed to the other, precluding a recovery.

■ Either phase of the propositions just mentioned raises interesting questions of law which can be more readily solved by stating our conclusions of fact concerning—principally—the status of Latimer on the particular occasion, as reflected by the record. This plaintiff was secretary-treasurer of defendant Corporation, being paid $20 per week for the following duties, as testified by him: "I had access to all the cash—that is, of the office. I also countersigned the checks for Mr. Horne. I looked after the office. I had the keys to the office, the keys to the filing cabinet and all of our lockboxes * * *. I kept the books of the Corporation. Q. Any other duties? A. No." It can also be concluded from the jury answers that the instructions of Mr. Horne, General Manager, to Berry, the salesman, were to take the prospective purchaser to Dallas and effect a sale; plaintiff's responsibility on the trip, as an officer of the Corporation, being to sign a so-called trust receipt and receive the purchase-money notes. It cannot be contended under the testimony that Latimer pos-

sessed right of supervision over Berry in the latter's operation of the company car; and, except as just stated, he had no duty touching the ultimate sale. In the contemplated transaction, both of these parties were but serving the Corporation in their different capacities, as instructed by their general manager, Mr. Horne; who, and not Latimer, was the vice-principal. Plaintiff's errand on the occasion contemplated no nondelegable duty of his employer, but one simply appertaining to him as an officer of Horne Motors, Inc.; and a corporation is a juristic person, having a legal entity, separate and apart from its officers and members; Fletcher Cyc. Corps. (Per.Ed.) Vol. 1, Sec. 25, pp. 84, 87. Neither can it be said (from facts already stated) that plaintiff was the fellow servant of defendant Berry at the time; Latimer's presence in the car being indisputably not relating to his regular employment as a bookkeeper, but as an officer of the concern; 39 C.J., Master and Servant, Sec. 1354, pp. 1173–1175. In this connection, it should be noted that, after his injury, plaintiff first made claim to the Industrial Accident Board, as Horne Motors, Inc., was a subscriber to workman's compensation, which application was later withdrawn because of his official status as secretary-treasurer; R.S. art. 8309, § 1a. The four propositions arising on points just under discussion will be overruled.

■ It is next argued that the relationship of master and servant existed between Berry and his employer while on the particular drive, and no liability resulted from a negligent operation of the car, absent proof that the master specifically directed the manner of driving, speed, etc., which is alleged to have caused the collision. It is sufficient that Berry's principal instructed him to make the trip, in the course of which, plaintiff's injuries were sustained; 29 T.J., Master and Servant, Sec. 74, p. 132.

■ It is well settled that when the issue of new and independent cause is raised by the evidence, it is error for the trial court not to include such terms and a definition thereof in the standard instruction on proximate cause. This was not done in the instant case, the term being separately defined in the charge as a predicate for issues 21 and 22, inquiring whether the headlights of an eastbound car obscured the vision of defendant Berry to the extent that he could not see the

Copeland truck, thus constituting a new and independent cause of the collision. Though both of the last-mentioned issues were answered in the negative, defendants insist that the issue of "blinding lights" being in evidence, the court erred in failing to embody the element of intervening cause in all preceding issues on defendants' negligence and proximate causation, concerning which plaintiff had the burden of proof. The term or element contended for by defendants means, "the act or omission of a separate and independent agency, which destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes, in itself, the immediate cause of such injury". Phœnix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60, 61. Bearing in mind the above definition, we do not think "separate and independent agency" is raised by the record; as a careful examination of all relevant testimony and the physical facts surrounding the occurrence will demonstrate. The collision is envisaged at a point near Tennison's Filling Station, well within the city limits of Edgewood, where the constantly traveled highway extended straight west several hundred yards, and similarly for 3 miles back to the east. It was early nighttime, with weather conditions already described. Immediately prior to the mishap, Berry was driving the company automobile between 45 and 50 miles per hour, when a car approached with blinding headlights, going east. After passing that car, he saw the Copeland truck about 50 to 60 feet ahead, on the right-hand side of the road, also proceeding westwardly. Berry then swerved to the left-hand side of the highway to pass the truck, when he met the headlights of a second eastbound car; and in turning again to the right-hand, this witness testified: "I was applying my brakes; I was on top of the truck—it was only a short distance away.

"Q. How fast was the truck going? A. It was driving very slow. * * *

"Q. * * * did you have room there to swing around that Ford pickup truck without hitting it? A. I had room to have swung around it if I had had time; I was too close, though.

"Q. In other words, now, in the time intervening there you could not swing around and miss it? A. No, sir."

Mr. Berry, on cross-examination, further limited blinding headlights to the first approaching car, and upon applying his own dimmers, the on-coming car driver failed to respond. Again referring to the record, he said:

"Q. You knew as you were approaching him that he had powerful lights? A. Yes sir, that is the reason I checked down on my speed.

"Q. You could reasonably anticipate that he had powerful lights and that if he didn't dim them, you would be blinded? A. Yes sir.

"Q. That is the reason you kicked on your dimmer switch? A. Yes sir."

Berry further stated that, from his experience in driving at night, one is often blinded by opposing headlights and that if dimmers are not applied by the passing car, he would expect to be blinded; in which case, he always pulled to the right side of the road and checked down; but that he did not have time on the night in question to slow down to any appreciable extent. He said that if the taillight of the Ford truck was burning at the time of the collision, same was very dim, but according to Mr. Copeland, it was on when he turned into the highway about fifteen minutes before.

 This witness (Berry) was driving his employers' automobile on the particular occasion, at an unlawful and, therefore, negligent speed. Vernon's Ann.P.C. art. 827a, Sec. 8; which negligence continued to the point of impact. The influence of the first car's powerful headlights had ceased when he was 50 or 60 feet to the rear of the Copeland truck, hence they could not be said to have destroyed the causal connection between the driver's negligent speed and the ensuing consequences; therefore becoming "in itself, the immediate cause of such injury." Burning headlights of car No. 1 were thus not the intervening cause of the collision. At most, they were but a concurring or contributing cause. Texas Power & Light Co. v. Culwell, Tex.Com.App., 34 S.W.2d 820; Texas Public Service Co. v. Armstrong, Tex.Civ.App., 37 S.W.2d 294, writ refused; Gulf, C. & S. F. Ry. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659. Again, a new and independent cause must be one incapable of being foreseen by the original wrongdoer, in the exercise of ordinary care. Under the present facts, at the speed he was maintaining, and in the interval after passing car No. 1, Mr. Berry

could have avoided the collision, but for the approach of car No. 2 (not shown as having blinding lights). The latter vehicle was properly on the road; it was a common hazard of nighttime driving, and a factor which Berry frankly admitted he should reasonably have anticipated. "The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise." Mexican Nat. R. Co. v. Mussette, 86 Tex. 708, 26 S.W. 1075, 1080, 24 L.R.A. 642; Missouri-Kansas-Texas R. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474; Johnson v. Smither, Tex.Civ.App., Ft. Worth, 116 S. W.2d 812; Reeves v. Tittle, Tex.Civ.App., 129 S.W.2d 364, writ refused; and in Restatement, Torts, Sec. 449, p. 1202, is stated: "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

 Defendants attack the court's definition of "unavoidable accident" as imposing upon them an undue burden of proof, citing Dallas Ry. & Terminal Co. v. Redman, Tex.Civ.App., 113 S.W.2d 262, where Judge Brown, of the Fort Worth Court, condemned a similar instruction; and Dallas Ry. & Terminal Co. v. Price, 131 Tex. 319, 114 S.W.2d 859, where the Supreme Court discusses an approved definition of the term. Conceding such instruction to be too comprehensive and therefore prejudicial, only harmless error was involved, as clearly the issue of unavoidable accident was not raised. We may disregard the jury's findings on speed of defendants' Packard car at the time, and yet be forced to conclude as a matter of law that the employee Berry was negligent in such regard. The accident happened inside the corporate limits of Edgewood. With respect to the movements of his car, Mr. Berry testified:

"Q. What rate of speed did you say you were going at the time you hit the truck? A. Between forty-five and fifty.

"Q. You wouldn't say you were driving under forty-five, would you? A. No sir."

The Copeland truck was '50 or 60 feet in front of Berry, when the latter regained his normal vision, traveling between 20 and 25 miles per hour in the same direction. In Dallas Ry. & Terminal Co. v. Darden, Tex. Com.App., 38 S.W.2d 777, 779, the rule is announced concerning unavoidable accident vel non, as an issue: "In order to determine whether such issue is involved, the facts of each particular case must be examined with the view of ascertaining whether there is presented a theory under which the accident could have happened, notwithstanding all the parties to the transaction exercised the degree of care required by law." It thus appears that when defendant's car struck the Copeland truck, it was being propelled at a speed in excess of 20 miles per hour within the corporate limits of a town, and beyond the general statutory speed limit of 45 miles per hour elsewhere; constituting negligence in either event as a matter of law. Vernon's Ann. P.C. art. 827a(8). If Berry had been proceeding at a lawful speed of 20 miles per hour within said city limits when he discovered the Copeland truck, obviously, the collision would not have occurred; thereby dispelling any theory under which the accident might have happened had both plaintiff and defendants exercised due care.

 Defendants also complain that issue 8, involving the speed of Berry's car in excess of 45 miles per hour as being a proximate cause, was obnoxious, as assuming a controverted fact. Primary issue No. 6, fixing such speed, was in proper form, even if necessary under our conclusions already reached that the particular fact was undisputed. Aside from this, however, the issue complained of is not essential to the judgment, since the jury found negligence in other respects.

 Defendants predicate further error in the trial court's refusal of various defensive issues: First, whether plaintiff Russell O. Latimer was an employee of Horne Motors, Inc. In disposing of earlier propositions, we have held that plaintiff, on the Dallas trip, was merely undertaking duties devolving upon him as secretary-treasurer of his Corporation; and although he kept the company books, his part of the trip contemplated nothing relative to his employment as bookkeeper. The common-law rule of fellow servant is now in a state of practical obsolescence, perforce of state

and federal legislation; but, assuming plaintiff's status at the material moment was not indisputably that of a corporate officer, yet the fact question tendered by defendants was incomplete and could not, alone, form the basis of a defense, absent a further issue and finding that plaintiff, at the time, was engaged in regular bookkeeping duties for his employer. 39 C.J., Master and Servant, Sec. 1354, p. 1173, citing Texas cases.

Neither was the defense of joint enterprise raised by the testimony. The trip was not personal to either plaintiff or Berry, but both were acting in furtherance of a third person's business—Horne Motors, Inc.—and not on their own joint affairs. Moreover, joint mission is no defense as between the enterprisers. It is a doctrine operating only in favor of a third party defendant. Restatement, Torts, Sec. 491, pp. 1274, 1275; Campbell v. Campbell, 104 Vt. 468, 162 A. 379, 85 A.L.R. 626; O'Brien v. Woldson, 149 Wash. 192, 270 P. 304, 62 A.L.R. 436; Archer v. Chicago, etc., Ry. Co., 215 Wis. 509, 255 N.W. 67, 95 A.L.R. 851.

No evidence is pointed out in the record raising issues on absence of a rear light to the Copeland truck; or that car No. 2, heretofore mentioned, was approaching at high speed, had bright headlights, or failed to dim them; hence no error resulted in their refusal. Our careful study of this record does not reveal grounds for reversal of the judgment under review, and an affirmance thereof must follow.

Affirmed.