**DIETZ, Appellee v. CHANDLER et, Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6139. Decided April 12, 1943.

Mr. Charles H. Elston, Cincinnati and Mr. Edward C. Skelton, Cincinnati, for appellee.

Mr. Edgar M. Williams, Akron and Messrs. Frost & Jacobs, Cincinnati, for appellants.

## OPINION

By MATTHEWS, J.

On this appeal, no assignments of error, eo nomine, was filed. There was filed by original counsel for appellant a one and one-third page "brief" attacking the validity of the judgment in general terms on the ground that it was not supported by the evidence or, at least, was contrary to the manifest weight of the evidence, and specifically that there was no evidence of joint enterprise upon which the liability of the appellant, Albert L. Chandler, depends, and perhaps one other assignment, as hereinafter noted.

Succeeding counsel for appellant in oral argument sought to raise the issue of other errors and based his argument to some extent upon them.

By §12223-22 GC, the court is authorized to disregard errors not argued by brief. In view of the failure to file a separate assignment of error and the failure to set out in the brief specific errors other than above stated, we believe the case calls for the exercise of the discretion vested in the court to disregard all errors except those mentioned in the brief with sufficient particularity to enable the court to identify them. Any other ruling would completely nullify the statute requiring assignments of error and briefs. We do not mean to imply, however, that there is prejudicial error in the record not embraced within the general terms of the briefs.

Giving the appellant's brief a liberal construction we find that it is asserted that there is error in the record in the following respects:

(1) That there is no evidence of negligence on the part of the appellants, or, in the alternative, that the verdict finding negligence is manifestly against the weight of the evidence.

(2) That if Earl H. Chandler was negligent in the operation of the automobile, his negligence is not imputable to the defendant, Albert L. Chandler.

(3) That the decedent was negligent, or, in the alternative, that the verdict exonerating him from negligence di-

rectly contributing to the collision is manifestly against the weight of the evidence.

(4) That the trial court in giving further instructions on request of the jury failed to make his instructions responsive to the request and by his manner indicated that he desired a verdict for the plaintiff.

We will consider the first two assignments together.

(1 & 2) On April 9th, 1938, the defendants, who are father and son, started from their home in Akron, Ohio on a pleasure trip through the southern states, suggested by the son, but planned by both. By noon, they had reached a point on Route No. 42, north of Sharonville, Hamilton county, Ohio, when a collision took place between the automobile in which they were traveling and the decedent's automobile, which was being operated by him in the opposite direction. The defendant, Albert L. Chandler owned the automobile and at the time was sitting to the right and alongside of his son Earl H. Chandler, who was operating it. A trailer also owned by Albert L. Chandler, was attached to the automobile.

Approaching Sharonville from the north Route No. 42 has a descending grade and a curve to the west. It was on this descending curve that the collision occurred and there is substantial evidence from the location of substances jarred from the automobile that it occurred on the east side of a white line that marked the center of the road. There is evidence that the defendants were traveling at about 45 miles per hour.

It had been snowing and the pavement was wet. Several witnesses testified to a conversation or conversations with the defendants when both were present in a small kitchen in which one or both said that the trailer skidded and pulled their automobile across the center onto their left side of the road into collision with the decedent's automobile. We find that there is evidence that each defendant made a statement to that effect, but whether the father did is not very material, as it is clear that if he did not actually make such a statement he was present when his son did and did not contradict him. There is, therefore, evidence that he made the admission by his silence at the least. 17 O. Jur. 314 et seq.

We, therefore, find that the issues of negligence and contributory negligence were properly submitted to the jury and that this court would not be justified in disturbing its finding that the operator of defendant's automobile was negligent and that the decedent was not.

(3) But it is said that Albert L. Chandler was not operating the automobile and that the negligence of the operator is not imputable to him and that in any event the judgment

against him cannot stand. On the other hand, the plaintiff based its claim of liability of Albert L. Chandler on the allegation that he and his son were engaged in a joint enterprise and contended that the evidence supports that allegation. The charge of the court submitted the case on that basis. In addition to the general verdict against both defendants, the jury answered special interrogatories and by these answers disclosed that the general verdict against Albert L. Chandler must have been the result of imputing the negligence of Earl H. Chandler to him. The jury specifically found that the defendants were engaged in a joint enterprise at the time of the collision. It therefore becomes vital to the validity of the verdict against Albert L. Chandler to determine whether there is substantial evidence of the existence of a joint enterprise between him and Earl H. Chandler.

The defendants were father and son. The son was living with his father and attending the University of Akron. He worked four nights per week at a restaurant. They had been accustomed to take long automobile pleasure trips, and this trip was arranged and they planned to be away from home one week and to travel in the automobile more than two thousand miles. The father furnished the automobile, the trailer and the equipment that usually goes with such, and the son intended to pay most of the expenses. They had no specific destination, but intended to go to Louisiana and Mississippi. There was no specific arrangement as to who should do the driving. but the son had done so from the start and was driving at the time of the collision. The father knew how to operate an automobile and on prior excursions had alternated with his son in the operation of the automobile. There is nothing to indicate that he was not entirely capable of operating an automobile at the time of this collision. Within a minute or two before the collision, he had cleaned the windshield where the defroster did not hit it. Otherwise, it does not appear that the father had assisted in any way in the management of the automobile or had given any direction as to the manner of driving on this trip. They started with food for lunch contributed by both. They made no specific plans for this trip as they had been in the habit of taking similar excursions two or three times each year.

Many cases were commented on in oral argument involving the application of the law of joint enterprise. It would serve no purpose to review them in detail. The issue always is whether there is any substantial evidence of a right to control the operation of the automobile. Upon the subject of the presence of the owner in his automobile at the time of an accident, it is said in 5 Am. Juris., 695, that:

"The owner's presence in the car at the time of an accident is, however, an important element where recovery is sought on the theory that the operator was acting as his servant or agent or that the owner had control over the operation of the car; an inference may readily be drawn, from the fact of the owner's presence, that the automobile was being driven by his agent or that he had some control over it. The strength of the inference varies with the circumstances—probably the strongest is drawn against the owner in a case where his wife or child is driving with him when an injury occurs. In a number of cases, under the facts proved, where the car in which the owner was riding was being driven by a member of his family, the owner was held liable for the negligent operation of the car."

Many of the cases on this subject are collected in the annotations to the cases of Zeeb v Bahnmaier, (103 Kan. 599, 176 Pac. 326), 2 A. L. R. 882; Rodgers v Saxton, (305 Pa. 479, 158 Atl. 166), 80 A. L. R. 280, and Fox v Lavender (89 Utah 115, 56 P. (2d), 1049), 109 A. L. R. 105.

While mere presence of the owner in his automobile is not sufficient to charge him as a matter of law with liability for its negligent operation, that fact is an important circumstance which combined with other circumstances may be sufficiently strong to justify a jury in drawing a reasonable inference that he had the right to direct the mode and manner of operation. If all the circumstances justified such a reasonable inference and a jury by its verdict so decided, the court would not be warranted in disturbing its finding. The jury in this case both by its general verdict and answer to a special interrogatory has found that the father and son were engaged in a joint enterprise at the time which gave them equal control over the operation of the automobile.

We believe the evidence supports the verdict. It shows more than the mere presence of the owner at the time of the collision. It shows that he was there because he and his son, who still lived with him and was still in school, had arranged to live in that automobile and trailer for a week while they traveled more than two thousand miles. It shows that he could, and had, on former similar trips, taken his turn in operating the automobile. It shows a sharing of the expenses of the trip, and it also shows that he had helped just before the collision by wiping the windshield.

Many of the cases make a distinction between a joint interest in the object of the journey and a joint interest in the journey itself, but in this case the journey was the principal

object of their concern. The purpose and the journey were inseparable. Apart from the journey itself they had no definite object or destination.

It seems to us this case falls within the reasoning of the case of Archer v Chicago, Milwaukee, St. Paul & Pacific Railroad Company, (___ Wis. ___, 255 N. W. 67) 95 A. L. R. 851, the first paragraph of the syllabus of which is as follows:

"A husband and wife who jointly own an automobile in which one or the other, indifferently, acts as driver, are, in using it while returning home from a visit to their daughter, not host and guest, but engaged in a joint adventure, so as to make the contributory negligence of the husband in operating it imputable to the wife,"

It is true that in that case the parties were joint owners of the automobile, but complete ownership would not seem to weaken the inference of control against the owner. And the inference of control by the father over his student son would certainly be as strong as that of the wife over the husband.

(4) After the court had instructed the jury and it had retired, it submitted this written question to the court:

"Would it be possible to find the elevation of the highway at that time together with the weather conditions responsible for this accident rather than the negligence of anyone?"

Before the court had answered this question, counsel for defendants asked the court to instruct the jury that if the preponderance of the evidence failed to indicate negligence of any party, a verdict must be returned for defendants. Some additional interrogatories and amended interrogatories were offered with the request that the court instruct the jury to answer them.

The court refused all these requests and then proceeded to instruct the jury further, and to the content of and manner of giving this additional instruction the defendant excepted.

Certainly, the refusal to give special instructions and to submit interrogatories and amended interrogatories at that stage of the proceeding was not erroneous. Unlike requests made for that purpose before argument the giving or refusing rested in the sound discretion of the court. No error could be predicated upon the refusal.

In responding to the question of the jury, the court prefaced his instructions with the statement that the question

indicated that the jury was confused as to how to proceed in the determination of the case, and then proceeded to instruct it at considerable length and on most, if not all, of the issues.

We have read the instructions given in reference to the jury's question and can find nothing indicating that the manner of its delivery would disclose a prejudice in favor of the plaintiff.

Appellants' counsel assert that the jury's question discloses that it wanted information on the law relating to mere accident, not attributable to negligence of any one, and that the court completely failed to respond to the request. It is true that the court gave no specific answer to the question. We believe that a categorical answer would have been misleading by confusing the occasion or conditions of an accident with the cause or causes thereof.

The primary issue in this case was a simple one. There was no dispute about the collision. It occurred about noon. There was no evidence that either was forced onto the wrong side of the road by any unforseen or unforeseeable intervening agency or cause that would excuse the violation of the statute requiring each to keep to the right. The defendants denied that they were on the wrong side of the road at any time. But a collision took place. This could not have taken place unless one or both were violating that statute at the time. which would be negligence as a matter of law. Under such circumstances it was not error for the court to assume that the collision resulted from the negligence of one or the other or both. This it did and that excluded the possibility of a mere accident and rendered irrelevant a charge on that subject.

We have considered the other criticisms of these instructions and find that no prejudicial error intervened.

For these reasons, the judgment is affirmed.

ROSS, P. J., and HILDEBRANT, J., concur.

## ON MOTION TO DISMISS APPEAL

No. 6139. Decided May 24, 1943.

Mr. Charles H. Elston, Cincinnati, for appellee.
Messrs. Frost & Jacobs, Cincinnati and Mr. Edgar M. Williams, Akron, for appellants.

PER CURIAM:
This case first came to the attention of the court upon the motion of the appellee to dismiss the appeal and to strike the bill of exceptions.

18

Notice of appeal was filed March 6, 1942. A brief was filed April 25, 1942. No further action was taken until the calling of the case for argument December 17, 1942.

This brief of the appellant was very meager, but, upon examination of the court was considered ample to raise all the questions of error claimed by appellant to have intervened in the trial of the case, including the weight of the evidence. In view of the delay the request of appellant to file a more extended brief was then refused.

There being a vacancy in the personnel of the court, it was decided to withhold further consideration until the vacancy on the court was filled, as the two judges could not properly pass upon the weight of the evidence, which was raised by the meager brief. When the vacancy on the court was filled, the matter of further consideration of the case was taken up with local counsel, representing appellant, and the court was then under the impression that it was agreed between such counsel and counsel for appellee that the matter could be submitted to the court without further briefs or oral arugment.

The court then, after consideration by the three judges announced its conclusion in an opinion concurred in by the entire court, on April 12, 1943.

After the announcement of this opinion, counsel for appellant in Akron filed an application for rehearing, claiming that no opportunity to argue the case to a full court had been extended the appellant, and that no consent to present the matter otherwise had been given.

For these reasons, the court set the case for argument upon the merits on May 10th, 1943. Full argument was made by Akron counsel for appellant and a brief tendered by such counsel was accepted by the court.

After again considering the matter fully such argument and such brief the court is of the same opinion heretofore expressed and its former opinion is now adopted as its final opinion after such argument and briefing.

ROSS, P. J., HILDEBRANT and MATTHEWS, JJ., concur.