Leon W. MEINEN et ux., Appellant,

v.

Jack Edward MERCER, Appellee.

No. 63.

Court of Civil Appeals of Texas.

Corpus Christi.

April 15, 1965.

Rehearing Denied May 13, 1965.

Ben L. Adams, Jr., and Warren L. Eddington, of Adams, Eddington, Zimmerman, Friloux & Bobbitt, Houston, Pollan & Nicholson, Rosenberg, for appellant.

Howell E. Stone, of Talbert, Giessel, Cutherell & Barnett, Houston, for appellee.


SHARPE, Justice.

This is an appeal from a take-nothing judgment rendered against appellants, Leon Meinen and his wife Leslie Meinen, who were plaintiffs in the trial court, and in favor of appellee, Jack Mercer, who was the defendant therein.

The Meinens brought this suit to recover damages for injuries sustained as a result of Mercer driving his vehicle into the rear end of their car while it was stopped at an intersection red light stop signal. Trial was to the court and jury. Since Mercer was a minor at the time of the accident and the trial, he was represented by a Guardian ad Litem appointed by the court as well as by other counsel who appeared for him.

The court submitted fifteen special issues to the jury, the first eleven of which related to issues of liability and the last four to damages. Special issues 1 through 8 involved Mercer's alleged conduct, in substance, as follows: (1) That he followed the Meinen car too closely; (3) that he failed to keep a proper lookout for vehicles ahead of him; (5) that he was driving his car at an excessive rate of speed; and (7) that he failed to make a timely application of his brakes; issues 2, 4, 6 and 8 were proximate cause issues conditionally submitted in connection with the above-mentioned issues and were not answered because the jury did not answer any of the issues upon which they were predicated favorably to the Meinens. Special Issue 9 inquired about the alleged failure of Mr. Meinen to keep a proper lookout on the occasion in question and was answered favorably to appellants. Issue 10, inquiring as to proximate cause, conditionally submitted in connection with Issue 9, was not answered. By its answer to Special Issue 11, the jury found that the occurrence in question was the result of an unavoidable accident. By its answers to special issues 12 through 15, the jury found the Meinens' damages to be an aggregate of $6,228.00.

The Meinens assert seven points of error. Points I through V allege that the jury findings in answer to special issues 1 through 8 and on Issue 11 are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. Point VI complains of the action of the trial court in overruling appellants' motion for judgment non obstante veredicto. Point VII complains of the overruling of appellants' motion for new trial.

The basic facts are undisputed. On Sunday, March 26, 1961, shortly after 11 o'clock, A.M., the Meinens departed from their home in Houston, Texas, in their new Pontiac Tempest automobile, on a trip to Archer, Texas, with Mr. Meinen driving and his wife sitting in the right front seat. They proceeded in a westerly direction on U. S. Highway 59 and as they approached its intersection with Spur 58 in Sugarland, Texas, the electric signal light there turned to red. Mr. Meinen stopped the car pursuant to said signal and it was sitting still when the vehicle driven by Jack Mercer, who was then 17 years of age, struck it from the rear and knocked it through the intersection some 40–60 feet. The Meinens did not see the Mercer car until after the impact and all of the testimony as to what happened immediately prior to the collision comes from Jack Mercer, the appellee, who testified when called by appellants as their first witness and later as a part of his defense.

Jack Mercer testified, when he first took the stand, in substance, as follows: That on the date in question he left his home in Sugarland, Texas, drove down Main Street, stopped at the intersection of said street with U. S. Highway 59, and then turned to his right, or toward the west on said

highway, at a point approximately 125 yards, or 375 feet, from the place where the collision thereafter occurred, at which last-mentioned point there is a left turn lane and two lanes for westbound traffic. Mercer said he was travelling about 30 miles an hour when he saw the signal light at the intersection of U. S. Highway 59 and Spur 58 change from green to amber, at about 25 miles per hour when the light changed from amber to red, and at about 20 miles per hour when his car struck the Meinens' car. Mercer further said that it had been raining most of the day and the highway was slick. It was not raining at the time of the collision and he was not operating his windshield wipers on said occasion. Mercer said he first applied his brakes after the signal light turned red when he was about 50 feet from the Meinen car. He first observed the Meinen car after he had applied his brakes and his car started sliding. He said he was familiar with the said intersection, had travelled over it many times, and knew that he had to stop for the red light on the occasion in question. When asked why he did not stop, he said, "Well, the first time I applied my brakes, my car fishtailed, and I let up, and when I stepped down all the way, my power brakes —the wheels locked."

When he took the witness stand the second time as a witness in his own behalf, Mercer testified, in substance, as follows: When he turned his car on to U. S. Highway 59 he drove it directly to the lane in which the collision later occurred. At that time he did not observe the Meinen vehicle. He explained his use of the term "fishtail" as follows: "Well, the first time I stepped on my brakes, is when I saw the light turn red, my car kind of slid, the back end of it slid around, and then, I let up on my brakes, and stepped on them again, that is when I started sliding." Mercer testified further as follows:

"Q. Now, then, why didn't you see that the road was completely blocked up there?

"A. I can't answer that, I don't know.

"Q. Were you looking?

"A. Evidently I wasn't looking right straight ahead, I don't remember —I don't remember seeing the Meinen car until I hit it.

"Q. If you would've looked straight ahead, if you would've looked straight at the traffic control signal, you said you would've saw that?

"A. Yes, sir.

"Q. And you said that you saw these two cars on the right, and two cars on the left?

"A. I saw them after I noticed them —after I started sliding, I noticed the Meinen car after I started sliding, but when I turned on the highway, I did not see the Meinen car. I did not see them come to a stop.

"Q. Well, when you turned on the highway, did you see that the road was blocked there in front of you?

"A. No, sir."

On cross-examination Mercer conceded that he saw the caution light of the signal at the intersection when he was about 90 yards away from it and that if he had taken his foot off the accelerator his car would have come to practically a complete stop without applying his brakes.

Disposition of this case will be expedited by first considering appellants' Point VI under which it is contended that the trial court erred in overruling the Meinens' motion for judgment non obstante veredicto. We sustain this point on the basis that the evidence conclusively established that Mercer failed to keep such proper lookout for other vehicles ahead of him proceeding in a westerly direction and that he failed to make timely application of his brakes on the

occasion in question as would have been done by a person of ordinary prudence and that such negligence in each instance was a proximate cause of the collision with the Meinen car. Under such conditions the issue of unavoidable accident was not in the case and the jury finding as to same may properly be disregarded.

In Hoey v. Solt, 236 S.W.2d 244 (Tex. Civ.App.1951, n. w. h., opinion by Norvell, J.) a rear-end collision case in which the Court of Civil Appeals held that negligence and proximate cause were conclusively established against the driver of the vehicle approaching from the rear, at page 246 of the opinion, the court said:

"It can not be gainsaid that one who fails to stop his automobile in response to a traffic signal, but propels the same into the rear end of an automobile which has stopped in obedience to the signal, is guilty of negligence proximately causing injury or damage unless such conduct is excused by some extenuating circumstance or condition."

In the cited case the jury had found that the action of the driver of a third automobile in crowding defendant from the right was the sole proximate cause of the collision between the automobile of the defendant and that of the plaintiffs. At page 246 of the opinion, the court said:

"Automobile drivers on city streets must for their own safety necessarily notice cars which drive along side them, but this circumstance cannot excuse them from failing to heed traffic lights and see vehicles immediately ahead of them. Even if the actions of the third driver be considered a proximate cause of the collision, it can not be reasonably maintained that such actions constituted the *sole* proximate cause thereof. Under the facts of this case, it is conclusively established that defendant was negligent and that such negligence was a proximate cause of the collision. In applying the standard

of a 'person of ordinary prudence,' the discretion or authority of a jury is admittedly extensive, but it is not without limit. This creature of the law and standard of comparison must conform to a pattern of behavior in keeping with the words used to describe him. He must be law-abiding and can not be wholly imprudent."

In Caraway v. Behrendt, 224 S.W.2d 512 (Tex.Civ.App.1949, n. w. h.) at page 514 of the opinion, the court said:

"The rule is well stated in Vol. 2 of Blashfield's Cyclopedia of Automobile Law, and Practice, Perm. Ed., § 942, p. 94, which reads as follows:

'A motorist has right to follow another motorist at reasonable and safe distance. However, he must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of a car in front suddenly stopping, maintaining a proper lookout for the car immediately preceding him, and so that he can stop without a collision, or can turn out sufficiently to pass the vehicle in front without going across the street in the way of traffic approaching from the opposite direction, as that will naturally result in collision with such traffic.'

"Again, the rule is well stated in Rankin v. Nash-Texas Co., Tex.Civ.App., 73 S.W.2d 680, 683:

" 'It may be stated as a wise and salient rule of law that, in trailing other automobiles, a motorist must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of the automobile in front suddenly stopping or decreasing its speed, so that he can stop or decrease his speed to avoid a collision, or can turn out safely to pass the vehicle in front. One cannot run down a vehicle proceeding in the same direction, without having been guilty of some negligence in the operation of his own, un-

less it appears that the collision was due to contributory negligence of the driver of the other vehicle. The collision, under ordinary circumstances, furnishes some evidence of negligent acts or omissions on the part of the driver of the trailing vehicle, which ordinarily calls upon the driver of the rear vehicle to explain and usually presents a question of fact for the determination of a jury.'"

■ The Meinen car was ahead of Mercer on U. S. Highway 59 for all of the time that Mercer was travelling the distance of approximately 375 feet from the street where he turned onto such highway until Mercer rear ended the Meinen car. If Mercer had looked, as a reasonably prudent person would have done under the circumstances, he would have observed the Meinen car long before he applied his brakes and, according to his testimony, started sliding. Mercer was under a duty to keep a proper lookout for vehicles ahead of him on U. S. Highway 59. His failure to see the Meinen car until after he applied his brakes and started sliding (or until he hit the Meinen car, as he testified at one point) constitutes negligence as a matter of law. Hoey v. Solt, supra; Musslewhite v. Gillette, 258 S.W.2d 104 (Tex.Civ.App.1953, n. w. h.); Lackey v. Gulf, C. & S. F. Ry. Co., 225 S. W.2d 630 (Tex.Civ.App.1949, n. w. h.); Standard Paving Co. v. Webb, 118 S.W.2d 456 (Tex.Civ.App.1938, n. w. h.); Schawe v. Leyendecker, 269 S.W. 864 (Tex.Civ. App.1925, n. w. h.).

■ Our conclusion that Mercer's negligence in failing to keep a proper lookout was a proximate cause of the collision in question is not affected by his testimony that the highway was slippery on the occasion in question. Some of the general rules concerning the operation of a vehicle on a slippery street or roadway, may be stated as follows:

"The driver of an automobile should exercise, in operating the vehicle, a degree of care that is commensurate with existing road conditions, so as to keep the vehicle under control on a slippery street or road and not cause injury to another vehicle by skidding into it. An operator will not establish freedom from liability merely by showing that his vehicle had skidded." 7 Tex.Jur.2d, Automobiles, (Effect of Road Condition) § 90, p. 422.

"The driver of a car must exercise care commensurate with the conditions existing to keep it under control on a slippery street or road, so as not to cause injury to another vehicle or an occupant thereof by skidding into it, particularly where the car is being driven on a grade or curve, or at an intersection, or where it is proceeding at a considerable speed. While skidding is not in itself, and without more, evidence of negligence, skidding may be evidence of negligence if it appears that it was caused by a failure to take reasonable precautions to avoid it when the conditions at the time made such a result probable in the absence of such precaution. The mere fact, therefore, that an automobile skids does not of itself constitute evidence of negligence upon the driver's part so as to render the doctrine of res ipsa loquitur applicable. Skidding is not an occurrence of such uncommon or unusual character that, unexplained, it furnishes evidence of the driver's negligence. The question is one of the exercise of care; if the requisite degree of care is exercised, no liability results from the skidding. However, the fact that the skidding of an automobile, considered by itself as an isolated factor unrelated to surrounding circumstances, is not evidence of negligence, does not mean that skidding always constitutes a defense to other proven acts of negligence." 5A Am.Jur., Automobiles and Highway Traffic, (Skidding) § 341, pages 439–441.

"The principal inquiry in cases of skidding is as to the driver's conduct prior to such skidding. The speed of the automobile and the care in handling the automobile, particularly in the application of brakes, are factors to be considered in determining whether he exercised due care. When there is ice on a hard-surfaced highway, drivers are charged with the duty to take care and caution in the operation of their vehicles proportionate to the known and obvious dangerous condition of the highway." 5A Am.Jur., Automobiles and Highway Traffic, § 342, p. 441.

"Nevertheless, skidding may constitute negligence or evidence of negligence where it appears that it was caused by a failure to take reasonable precaution to avoid it when the conditions at the time made such a result probable in the absence of such precaution." 8 Am.Jur.2d, Automobiles and Highway Traffic, (Slippery pavement; skidding.) § 689, p. 239.

In the case of Horne Motors v. Latimer, 148 S.W.2d 1000 (Tex.Civ.App., 1941, wr. dism., judg. corr.), a rear end collision was involved which occurred after nightfall with misting rain and wet pavement just within the city limits of Edgewood, Texas. The jury found a number of acts of negligence against the driver of the rear vehicle proximately causing the collision and damages to a passenger in his car. One of such acts of negligence was on the part of the driver of the rear vehicle in failing to keep a proper lookout for trucks driving in the same direction on the highway at the time, which negligence was a proximate cause of the collision. Another act of negligence on the part of said driver was in driving his car at an excessive rate of speed which was negligence and a proximate cause of the collision with the vehicle ahead of him and of the injuries to said passenger.

The driver of said rear vehicle contended that the accident in question was due to a new and independent cause in that just prior to the collision with the car ahead of him another car travelling in the opposite direction with bright headlights had obscured the vision of the driver of said rear vehicle thus constituting a new and independent cause of the collision. Complaint was made that the element of intervening cause had not been embodied in the preceding issues on defendant's negligence and proximate cause concerning which plaintiff had the burden of proof. At page 1004 of the opinion in referring to the alleged blinding headlights of said automobile approaching from the opposite direction, the court said:

"At most, they were but a concurring or contributing cause. Texas Power & Light Co. v. Culwell, Tex.Com. App., 34 S.W.2d 820; Texas Public Service Co. v. Armstrong, Tex.Civ. App., 37 S.W.2d 294, writ refused; Gulf, C. & S. F. Ry. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659. Again, a new and independent cause must be one incapable of being foreseen by the original wrongdoer, in the exercise of ordinary care. Under the present facts, at the speed he was maintaining, and in the interval after passing car No. 1, Mr. Berry could have avoided the collision, but for the approach of car No. 2 (not shown as having blinding lights). The latter vehicle was properly on the road; it was a common hazard of nighttime driving, and a factor which Berry frankly admitted he should reasonably have anticipated. 'The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subse-

quent events and agencies which might arise.' Mexican Nat. R. Co. v. Mussette, 86 Tex. 708, 26 S.W. 1075, 1080, 24 L.R.A. 642; Missouri-Kansas-Texas R. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474; Johnson v. Smither, Tex.Civ. App., Ft. Worth, 116 S.W.2d 812; Reeves v. Tittle, Tex.Civ.App., 129 S.W.2d 364, writ refused; and in Restatement, Torts, Sec. 449, p. 1202, is stated: 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' "

In Chicago, Rock Island & Pacific R. Co. v. E. D. Goodson, 242 F.2d 203 (5th Cir. 1957), a case arising in the State of Texas, at page 207 of the opinion, the court said:

"Finally, the railroad company complains of the failure of the trial court to include in its charge to the jury instructions on new and independent cause, sole proximate cause, and unavoidable accident. There was no evidence in the record from which the jury would have been authorized to find that any intervening act of the plaintiff or other person or agency occurred which, independently of the action of the backed-up water, brought about the explosion. 'The intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from consequences of negligence, if such negligence directly and proximately cooperates with the independent cause in the resulting injury.' Texas Power & Light Co. v. Culwell, Tex.Com.App., 34 S.W.2d 820, 821; Texas Public Service Co. v. Armstrong, Tex.Civ. App., 37 S.W.2d 294."

In the case of Brumage v. Blubaugh, 204 Md. 144, 102 A.2d 568 (Court of Appeals, Maryland, 1954,) the court said:

" 'The modern automobile, because of its speed, weight, power, and design and the operation of physical laws, is peculiarly subject to the danger of uncontrollable and erratic deviations from its ordinary course. Since it is held on its course by the traction between its tires and the road surface, whatever lessens that traction makes it more difficult to control, and increases the hazard of its skidding. That tendency, because of the power, weight and potential speed of such machines, carries a constant threat to all users of modern highways and imposes upon the drivers of automobiles the duty of exercising at all times care and vigilance to avoid increasing the danger of skidding created by any condition of the road surface which lessens the traction or grip of the machine on it by adapting the management of the car to the conditions. It is a matter of common knowledge chargeable to every one who operates an automobile on a public highway that the danger of skidding on a wet slippery surface increases as the speed increases. And not only does the probability of skidding increase under such conditions as the speed increases, but the seriousness of the possible consequences to other users of the highway increases proportionately. It is also obvious that any sudden swerving from a straight line by an automobile driven at high speed over a wet slippery street increases the probability of skidding, and that the driver is therefore under a constant duty to use all reasonable care to discover and avoid conditions which may require such a movement. Fillings v. Diehlman [168 Md. 306, 177 A. 400], supra; Berry on Automobiles, § 247; 5 Am.Jur. 654.' See also Stafford v. Zake, 179 Md. 640, 642, 20 A.2d 144.

Ceeder v. Kowach, 17 Ill.App.2d 202, 149 N.E.2d 766 (Appellate Court of Illinois 1958), involves facts very similar to the instant case. At page 767 of the opinion, the Court said:

"This is a personal injury action with verdict and judgment for defendant. Plaintiff has appealed.

"On January 26, 1954, about 3:15 P.M., plaintiff and defendant were driving their automobiles in a northeasterly direction on Ogden Avenue in Chicago. Both cars were in the same lane with defendant ten or fifteen feet to the rear. About one hundred feet west of the Kostner Avenue intersection, both cars were held up momentarily by traffic. When they started again defendant stayed about the same distance to the rear at a speed of ten to fifteen miles per hour. At the Kostner Avenue intersection plaintiff stopped his car for a red light and defendant's car skidded on the wet pavement and the collision resulted.

"Plaintiff contends that the trial court should have directed a verdict in his favor. There is no claim of plaintiff's contributory negligence but defendant contends the question of his negligence was for the jury. We think defendant was guilty of negligence as a matter of law since it is our opinion that he should have foreseen that plaintiff would probably have to stop for a red light; that traffic on adjoining lanes would prevent turning out of the way of plaintiff's car; that he would have to apply his brakes; that his car would probably skid on the wet pavement if the brakes were applied too suddenly; and that if he were going too fast or was not far enough behind he would collide with plaintiff's car."

■ Mercer testified that on the day of the accident it had been raining or misting off and on all day and that he knew that the highway was slippery. It was clearly foreseeable that Mercer's car might slide on the slippery pavement when he applied his brakes. He either weighed or should have weighed such slippery condition as he approached the Meinen car and the signal light in question. Since Mercer did not see the Meinen car until after he had applied his brakes and was within less than fifty feet of it, the slippery condition of the highway could not be a new and independent cause which destroys the causal connection between his negligence in failing to keep a proper lookout and the collision with the Meinen car. Horne Motors v. Latimer, supra; Harrison v. King, 296 S.W.2d 344 (Tex.Civ. App.1956, wr. ref., n. r. e., opinion by Pope, J.)

■ The evidence also conclusively established that Mercer failed to make such timely application of his brakes as would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances and that such negligence was a proximate cause of the collision in question.

Mercer conceded that he observed the caution or amber light at the intersection in question when he was about 90 yards from it; that such signal indicated "that the light is fixing to change, to be slowing down"; and that if he had taken his foot off the accelerator his car would have practically slowed to a complete stop without hitting the Meinen car, without applying the brakes; and that he did not apply his brakes until he was about 50–60 feet from the point of collision.

Article 6701d, Vernon's Ann.Tex.Civ. St., section 33(c) provides in substance that vehicular traffic shall stop at a red light on the near side of an intersection or before entering a crosswalk or the intersection and remain standing until the green or "go" is shown alone. Meinen stopped his car at the red signal in question as he was required to do. Mercer

could not ignore the fact that other cars were so required to stop and remain standing at such red signal, and he should have been operating his own vehicle in such manner as to stop it before colliding with the Meinen car, which was the first one facing said red light. Mercer was required to stop in the line of traffic in obedience to such signal just as was Meinen and other drivers of vehicles at such location. See Bass v. Stockton, 236 S.W.2d 229 (Tex.Civ.App.1951, n. w. h.). Under the conditions shown to exist here, the failure of Mercer to make a timely application of his brakes was negligence and a proximate cause of the collision with the Meinen automobile as a matter of law.

■ Since the evidence conclusively establishes that Mercer was guilty of negligence in failing to keep a proper lookout, and in failing to make a timely application of his brakes on the occasion in question, the issue of unavoidable accident was not in the case and should not have been submitted to the jury. Bransford v. Pageway Coaches, 129 Tex. 327, 104 S.W.2d 471 (1937); Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952); Hodges on Special Issue Submission in Texas, Sec. 21, page 57.

■ The remaining grounds of negligence alleged by the Meinens against Mercer do not affect the conclusions heretofore expressed. However, concerning the allegation that the Mercer car was following the Meinen car more closely than was reasonable and prudent under the conditions, we hold that the record is sufficient to support the negative finding of the jury thereon. The time element and distance involved are not sufficiently established by the record to enable us to say that Mercer was following too closely. It is possible, taking a view most favorable to Mercer under his testimony, that Mercer travelled substantially all of the distance from the point where he turned on Highway 59 to the point of impact with the Meinen car while it was stopped at the red signal light. Neither was it conclusively established that Mercer operated his vehicle at a greater rate of speed than that at which the same would have been driven by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances. The jury could have found that Mercer was negligent in such respect and that such negligence was a proximate cause of the collision. However, the jury was not required to do so under the conditions.

Appellants' point number six is sustained as it is apparent that the trial court should have granted their motion for judgment non obstante veredicto for the reasons above-stated. It is also our view that even if we had not so held, we would have been required to sustain appellants' points II, IV and V which contend that the answers to special issues 3, 7 and 11 (as a consequence of which issues 4 and 8 were not answered) were contrary to the evidence and to the great weight and preponderance thereof and were manifestly wrong and unjust; and, we would, for such reasons, have sustained appellants' point VII that a new trial should have been granted. Fisher v. Franke, 321 S.W. 2d 903 (Tex.Civ.App.1959, n. w. h.).

The judgment appealed from is reversed and is here rendered in favor of appellants for the amount of $6228.00, together with interest at 6% per annum from its date, August 27, 1963, and all costs in this court and in the court below.

Reversed and rendered.